Edward W. HORNSBY, Appellant,

v.

U. J. DOBARD et al., Appellees.

No. 18396.

United States Court of Appeals
Fifth Circuit.

June 14, 1961.

Lawrence J. Molony, Baldwin, Haspel, Molony, Rainold & Meyer, New Orleans, La., for Edward W. Hornsby, appellant.

Leonard B. Levy, Abraham I. Kleinfeldt, David L. Herman, H. Martin Hunley, Jr., Harry McCall, J. Barnwell Phelps, Gibbons Burke, New Orleans, La., for appellees.

Before JONES and BROWN, Circuit Judges, and CARSWELL, District Judge.

JONES, Circuit Judge.

The appellant, Edward W. Hornsby, brought an action for a declaratory judgment and $125,000 in damages against the Railroad Yardmasters of America, its president, deputy president and vice president, Local Lodge 99 of the Railroad Yardmasters of America, its general chairman and assistant general chairman, the New Orleans Union Passenger Terminal, its terminal manager, the rail lines which use the terminal, and one of the employees of the Illinois Central Railroad.

In his original complaint Hornsby alleged that he had been a station master in the employ of the Illinois Central Railroad, that upon the opening of the Union Passenger Terminal he became its employee as a station master, that Railroad Yardmasters of America had been certified as the collective bargaining agent of the yardmasters [1] employed by Terminal, that the certification resulted from the casting of fraudulent ballots, that Local Lodge 99 was chartered and that its officers and agents negotiated a collective bargaining agreement for the yardmasters employed by Terminal, that there was a false representation made to the persons negotiating the agreement between Local 99 and the Terminal that Hornsby held seniority as a clerk with the Illinois Central Railroad, that the seniority roster which was made a part of the agreement placed Hornsby as Number 6, whereas he had seniority as a yardmaster with the Illinois Central which entitled him to be Number 2 on the seniority roster of the Terminal's yardmasters, and all of these things, he alleged, were done pursuant to and in furtherance of a conspiracy to discriminate against him and deprive him of his rights and property without due process of law.

Although Hornsby stated in his original complaint that he had exhausted all of his administrative remedies, he did not there make any reference to any proceedings before the National Railroad Adjustment Board. In answer to the complaint it was asserted that the court was without jurisdiction, that Hornsby's claim had been submitted to and determined adversely to Hornsby's contentions, and that he was bound by the Board's decisions. Some of the defendants moved to dismiss, or in the alternative, for a summary judgment on the ground of lack of jurisdiction in the court. A copy of the Board's decision was submitted with the motion.[2] The appellant then filed a motion to amend his complaint by adding allegations with respect to the proceedings before the National Railway Adjustment Board. In

1. We are told that yardmasters and station masters may be regarded, at least for our purposes here, as being synonymous.

2. Statement 1. Claim and request of Claim: Yardmaster Edward W. Hornsby that agreement negotiated between alleged representative of Local Lodge # 99 of Railroad Yardmasters of America and New Orleans Union Passenger Terminal under date of July 16, 1955 and subsequent amendments, which agreement placed him No. 6 on Yardmasters seniority roster instead of in No. 2 position, which position Yardmaster

Hornsby contends is his rightful position; that said agreement and all subsequent agreements are null and void because at time of agreement, General Chairman of Local Lodge # 99 representing Railroad Yardmasters of America was not the true representative of the Local Lodge in that there was no representative election held, therefore all agreements entered into by said General Chairman of Local Lodge # 99 of Railroad Yardmasters of America and the management of New Orleans Union Passenger Terminal are null and void and of no effect and is [sic] a continuing viola-

the proposed amendment it was said that the Board is limited by the Railway Labor Act, 45 U.S.C.A. § 151 et seq., to hearing disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements, that Hornsby's claim involved the validity of the agreement rather than its interpretation, that the Board had no jurisdiction to consider his complaint of discrimination against him by his bargaining agent or to grant him any relief, and that he submitted his complaint to the Board and it did not refuse jurisdiction but proceeded to hear, decide and deny his claim.

The appellant included in his proposed amendment averments that at the time of hearing before the Board his request to use his own tape recorder was denied, that his request to use a public stenographer was denied, and that his request that the Board have a transcript made and a copy furnished him was denied.

There are two allegations of the proposed amendment which we will not attempt to paraphrase. The first of these, paragraph XXX, is:

"That the chairman of the particular division of the National Rail-

tion of the Railway Labor Act as amended; 2. Claim and request of Yardmaster Hornsby that he rightfully be placed on the New Orleans Union Passenger Terminal Yardmaster's seniority roster in the No. 2 position instead of the No. 6 position; . . .

Findings: The Fourth Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier and the employee involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

The parties to said dispute were given due notice of hearing thereon.

The record before the Division shows that on July 6, 1954, the Railroad Yardmasters of America was certified by the National Mediation Board, Case No. R–

way Adjustment Board, to-wit: Mr. V. W. Smith, Chairman of the Fourth Division, advised plaintiff clearly and unequivocally, prior to the time the Fourth Division heard plaintiff's case, that since he was the Assistant to the President of the Railroad Yardmasters of America, at a salary of $8,000.00 a year, he could not be expected to rule in the plaintiff's case contrary to the wishes of the President of the Railroad Yardmasters of America; that plaintiff cites these facts not in criticism of the former chairman of the Fourth Division of the Railway Adjustment Board, since under the statutory scheme, Section 3, First (c), Mr. Smith was expected to represent his employer, the Railroad Yardmasters of America, the very statutory bargaining agent that injured plaintiff; plaintiff cites these facts to illustrate that whenever the employee stands alone against the positions of both the union and the employer, as in the instant case, he cannot expect to receive 'due process' from a board composed of equal numbers of his adversaries."

2864, as the duly designated and authorized representative of the craft or class of yardmasters of the carrier for the purpose of the Railway Labor Act. This agreement and subsequent amendments between the carrier and the duly designated and authorized representative, negotiated pursuant to the Railway Labor Act, are controlling. The Division cannot entertain claimant's contention that the agreement and subsequent amendments are invalid because if such a contention were valid he would have no rights at all. Therefore, claim (1) must be denied.

The record further shows that the seniority date and rank of claimant as a yardmaster were established by the agreement between the carrier and the duly designated and authorized representative of the craft or class of yardmasters. His standing on the seniority roster is in compliance with the agreement. Therefore claim (2) must be denied.

The other allegation which we quote is the beginning of paragraph XXXII and reads as follows:

"That during the hearing before the National Railway Adjustment Board, the Chairman of the Fourth Division, Mr. V. W. Smith, stated in open session, that the plaintiff's seniority was incorrect, just as plaintiff claimed it was, but that the National Railway Adjustment Board could do nothing to correct it. * * * "

The appellant would, it seems, have the Court treat this alleged statement, attributed to Smith, as a disclaimer of the Board's jurisdiction, as the amendment continues by saying that instead of deciding that it had no jurisdiction "to decide the validity of the agreement causing the injury to the plaintiff," the Board proceeded to decide that his seniority was fixed by the agreement without deciding the validity of the agreement.

Supporting his motion for leave to amend, Hornsby filed an affidavit which, among other things, recited that the facts and allegations therein are true and correct to the best of his knowledge, information and belief. The motion for leave to file the amendments was granted, the motion to dismiss was granted, judgment was entered for the defendants, and this appeal followed.

Disputes between an employee or group of employees and a carrier "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" may be referred to the Adjustment Board. 45 U.S.C.A. § 153 First (i). The Railway Labor Act provides that the Adjustment Board's "awards shall be final and binding upon both parties to the dispute except in so far as they shall contain a money award." 45 U.S.C.A. § 153 First (m). See Union Pacific Railroad Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460; Majors v. Thompson, 5 Cir., 1956, 235 F.2d 449; Coats v. St. Louis-San Francisco Railway Co., 5 Cir., 1956, 230 F.2d 798; Sigfred v. Pan American World Airways, 5 Cir., 1956, 230 F.2d 13, certiorari denied 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1455; Michel v. Louisville & Nashville Railroad Co., 5 Cir., 1951, 188 F.2d 224, certiorari denied 342 U.S. 862, 72 S.Ct. 87, 96 L.Ed. 648.

■■■ Hornsby contends that although he invoked the jurisdiction of the Board, it should nevertheless have declined to decide the question presented because of absence of jurisdiction in the Board. On this theory Hornsby would have us treat the Board's decision as a nullity and treat him as though he had never submitted his dispute to the Board. This position, asserted in the amended complaint, is predicated on the theory that his claim asserts the invalidity of the agreement rather than requiring an interpretation of it. The Board has the power, conferred by the Act, to consider disputes "growing out of grievances" as well as those which grow out of "the interpretation or application of agreements." Hence we do not think it can be said that the Board was without jurisdiction. Even though there should be merit in this contention, and we are of the opinion that there is none, we should reach the same conclusion as was reached by the Third Circuit in holding:

"Whether we say that the party is bound by his own voluntary election between an administrative and an alternative judicial remedy, or describe the party who initiated the administrative proceedings as estopped from denying its agreed final and binding character, or view this as an application of the rationale of res judicata in a new area, we are satisfied that the court should declare and enforce a rule of repose against the reexamination of the merits of plaintiffs' claim in this case." Bower v. Eastern Airlines, Inc., 3 Cir., 1954, 214 F.2d 623, 626, certiorari denied 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685.

■ This does not, of course, decide the question as to whether the Board's decision may be subject to review or collateral attack because of procedural or other defects amounting to the absence of due process of law. If in the administrative procedures there has been a denial of due process, there is a right to a judicial review of the administrative decision. Ellerd v. Southern Pacific Railroad Co., 7 Cir., 1957, 241 F.2d 541. Sigfred v. Pan American World Airways, supra; Bower v. Eastern Airlines, Inc., supra. Cf. Pennsylvania Railroad Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480.

■ Although if due process has been denied, there may be a right of review of the administrative decision, the aggrieved employee may not escape the effects of submitting his grievance to the administrative forum and maintain an action for damages. See Union Pacific Railroad Co. v. Price, supra. Although the complaint here is not so framed as expressly to seek a review of the Board's decision, it challenges its validity on grounds of the bias and prejudice of those who participated in the decision as well as on the merits, and a declaratory decree is sought for the determination of the appellant's rights. It can be and should be treated as a petition for review of the Board's decision. Rychlik v. Pennsylvania Railroad Co., 2 Cir., 1956, 229 F.2d 171, reversed on other grounds Pennsylvania Railroad Co. v. Rychlik, supra.

■ One of the charges against the Board is that its Chairman, prior to its hearing, had told Hornsby that because he was an employee of the Railroad Yardmasters of America he could not be expected to rule contrary to its wishes. Different in degree but not in kind is Hornsby's assertion, inartfully made but nevertheless asserted, we think, that the Board was composed of his adversaries from whom he could not expect to receive a fair and impartial hearing. If it is shown that the union representatives on the Board have such personal interests arising out of their union memberships or employment, or from the agreement between the union and the carrier as would justify an inference of bias or partiality by reason of interest, then the right to a judicial review will not be denied. Edwards v. Capital Airlines, Inc., 1949, 84 U.S.App.D.C. 346, 176 F.2d 755, certiorari denied 338 U.S. 885, 70 S.Ct. 186, 94 L.Ed. 543. Thus if it is here made to appear to the district court that the Board, as constituted by the Act, was not such an unprejudiced tribunal as could afford to Hornsby the fair and impartial hearing and decision that due process requires, then its duty will be to review the Board's order.

It follows that the order of dismissal should be reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.