Harold R. MAGNUSON, Appellant,

v.

BURLINGTON NORTHERN, INC., D. S. Nelson, J. H. Woolford, and G. J. O'Connell, Appellees.

No. 76–2949.

United States Court of Appeals, Ninth Circuit.

June 12, 1978.

John C. Hoyt (argued), Hoyt & Bottomly, Great Falls, Mont., for appellant.

Bruce B. Toole (argued), Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for appellees.

Before BROWNING and HUFSTEDLER, Circuit Judges, and BONSAL,* District Judge.

HUFSTEDLER, Circuit Judge:

Magnuson appeals from a judgment dismissing his complaint based on common law intentional infliction of emotional distress on the ground that the gravamen of the action was a "minor" dispute growing out of his employment relationship with the defendant railroad and thus subject to the exclusive jurisdiction of the dispute resolving mechanisms under the Railway Labor Act ("R.L.A."), 45 U.S.C. §§ 151, et seq.[1] He contends that the district court erred in removing the action from the state court to the federal court and in dismissing it because (1) the gist of his action is in tort, rather than being based upon his wrongful discharge from his employment as a. railroad worker and is thus within the exception created by *Farmer v. United Brother-*

hood of Carpenters & Joiners, Local 25 (1977) 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338, and (2) alternatively, his complaint should be construed as an action to set aside the grievance procedure decision on the ground of extrinsic fraud. We agree with the district court that Magnuson's claim was within the ambit of the R.L.A. and that his failure to pursue the statutory grievance procedure was fatal to his claim.

On May 11, 1971, Magnuson was on duty as a train dispatcher for Burlington Northern, Inc. when a head-on collision occurred between two freight trains, resulting in the deaths of four railroad employees and injuries to others. Burlington's Montana division, acting through superintendent Nelson, conducted an investigation into the causes of the accident, and after a hearing, decided that Magnuson was responsible for the accident. Magnuson was thereupon discharged. He brought this action in Montana state court against the railroad, Nelson, and other supervisory officials of the railroad, alleging that he was the victim of a conspiracy among the defendants to cover up their own negligence which caused the accident. He disclaimed any responsibility for the accident. Magnuson's theory was that the alleged conspiracy which led to his dismissal was an intentional infliction of emotional distress for which he sought damages.

Pursuant to defendants' motion, the cause was removed to the federal district court, after defendants successfully argued that Magnuson's complaint was governed by the provisions of the R.L.A.

Magnuson necessarily concedes that if his claim is properly characterized as a "minor dispute," state law is preempted and his exclusive remedy lies under the R.L.A., as interpreted by the Supreme Court in *Andrews v. Louisville & N. R. Co.* (1972) 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95. He contends that he has avoided *Andrews* by confining his complaint to a tort action for intentional infliction of emotional distress, thus bringing himself within the exception

---

\* Honorable Dudley B. Bonsal, Senior United States District Judge, Southern District of New York, sitting by designation.

1. *See* 413 F.Supp. 870 (D.Mont.1976).

to *Andrews* created by *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25, supra,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338.

The first question is whether Magnuson's claim is a "minor" dispute within the meaning of 45 U.S.C. § 153 First (i), as in *Andrews,* or a common law tort exempted by *Farmer.* If the basic injury was his wrongful discharge, the complaint involves a minor dispute which must be arbitrated following the procedures of the R.L.A. All of the damages which he claims to have suffered flowed from his wrongful dismissal from his employment. The alleged evil motivation of the defendants would have caused him no legal injury if he had either not been discharged or if his discharge was not wrongful. The injuries for which he sought compensation included not only his emotional distress, but also his loss of income from his job from the time of his discharge until retirement age, together with loss of his retirement benefits. His emotional distress was an incident of the wrongful discharge, rather than a result of an alleged conspiracy. Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged. Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge. If the pleading of emotional injury permitted aggrieved employees to avoid the impact of the R.L.A., the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted.

Magnuson's complaint will not fit within the narrow exception to federal preemption explained in *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25, supra,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338. In *Farmer,* the petitioner's decedent, who had been a member and officer of the union, brought the action for infliction of emotional distress based upon "outrageous" conduct by union officials, with whom he had quarreled, in subjecting him to a campaign of personal abuse and harassment.

The alleged wrong by the union officials was not a grievance that was expressly covered by any provision of the N.L.R.A., and was only related tangentially to unfair labor practices which could have been made the subject of proceedings under the Act. The wrongful conduct was "a merely peripheral concern" of federal law (*San Diego Building Trades Council v. Garmon* (1959) 359 U.S. 236, 243, 79 S.Ct. 773, 3 L.Ed.2d 775) and both the wrongful conduct and the impact of that conduct upon the decedent affected interests which were "deeply rooted in local feelings and responsibility" (*id.* at 244, 79 S.Ct. at 779). The Court emphasized that its non-preemption holding was not a signal that these causes of action for infliction of emotional distress were generally exempted from preemption. The federal law remained exclusive if the action touched on an area of primary concern. Unlike *Farmer,* this action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.

Apart from the wrongful discharge aspect of the case, the alleged actions of the defendants of which Magnuson complains involve abuse of the investigatory process and the alleged presentation of false or misleading evidence at the hearing that led to his discharge. Both the investigation requirement and the fair hearing right are products of a collective bargaining agreement. Under Article 24 of the labor contract between Burlington and the American Train Dispatchers' Association, a train dispatcher cannot be disciplined "without proper investigation." The Article also spells out the components of a proper investigation and a hearing, including prior notice to the employee, the right of the employee to representation and to the presence of witnesses at the hearing, and the right of internal appeals, following decision, through the railroad hierarchy to the Adjustment Board. All of the alleged misfeasance of the railroad employees is thus "arguably" governed by the collective bargaining agreement or has a "not obviously in-

substantial" relationship to the labor contract. Under these circumstances, the controversy is a minor dispute within the exclusive province of the grievance mechanisms established by the R.L.A. (*See, e. g., United Transp. Union v. Penn Central Transp. Co.* (3d Cir. 1974) 505 F.2d 542, 544–45 ("not obviously insubstantial"); *Local 1477, United Transp. Union v. Baker* (6th Cir. 1973) 482 F.2d 228, 230 (both tests used); *Railway Express Agency v. Brotherhood of Railway, Airline & Steamship Clerks* (5th Cir. 1971) 459 F.2d 226, 231 ("arguably"); *Airline Stewards Ass'n v. Caribbean Atlantic Airlines, Inc.* (1st Cir. 1969) 412 F.2d 289, 291 ("not obviously insubstantial"); *Southern R. Co. v. Brotherhood of Locomotive Firemen & Enginemen* (1967), 127 U.S.App.D.C. 371, 374, 384 F.2d 323, 327 (same).)

Magnuson makes two subsidiary arguments in support of his primary contention that his action falls outside the purview of the R.L.A. The first is that the exhaustion doctrine should not be applied to him because it would deny his right to a jury trial. The Act does not provide for trial by jury, but that fact supplies no basis for excluding his grievance from the scope of the Act. The argument is an oblique attack on the constitutionality of the Act. We decline to address any constitutional issue because it was neither raised nor decided below.

His second contention is that the defendants' abuse of the investigation and hearing procedures was a denial of due process and that he is entitled to present his constitutional claim in a judicial forum without being required to exhaust his administrative remedies. Like the jury trial contention, this argument is little more than a restatement of his basic thesis that his complaint does not present a minor dispute. Because all of the claimed due process violations are also violations of the terms of the collective bargaining agreement, it is unnecessary to reach any constitutional question. These arguments not only can, but they must be addressed in the first instance to the forums provided by the Act. (*Cf. Andrews v. Louisville & N. R. Co., supra*, 406 U.S. at 324, 92 S.Ct. 1562;

*Hornsby v. Dobard* (5th Cir. 1961) 291 F.2d 483, 487.)

Finally, Magnuson contends that we should construe his complaint as an action to set aside the determination by the railroad hearing panel on the ground of extrinsic fraud. He argues that the Act provides no procedure for attacking before the Adjustment Board a final discharge determination on the ground of extrinsic fraud, and, therefore, he had no administrative remedies to exhaust. We reject the argument. Even giving a very liberal construction to the complaint, we are unable to read it as a claim for relief on the ground of extrinsic fraud. The allegations of misconduct are not collateral to the proceedings that he challenges in any respect. Moreover, nothing in the structure of the R.L.A. supports a contention that Congress intended to permit any judicial intervention in the grievance procedures until a claimant had exhausted his remedies within the statutory structure. Although the Act does not expressly provide that the Adjustment Board can entertain an attack upon a decision by a hearing officer on the ground that the decision was obtained either by extrinsic or intrinsic fraud, that power is implicit in the reviewing procedure established by the Act. We have no occasion on this record to reach the question whether the Adjustment Board could or would entertain a collateral attack on a discharge determination with respect to a claimant who had earlier failed to pursue his remedies before the Adjustment Board, nor do we have any reason to concern ourselves with the availability of collateral attack through the judicial process in respect of a claimant who has fully exhausted his administrative remedies.

AFFIRMED.

BONSAL, District Judge (dissenting):

I would reverse and direct the district court to remand appellant's claim for the intentional infliction of emotional distress to the Montana court. Federal labor relations law was not developed in a vacuum but "within a larger context of state law

creating rights of property, bodily security, and personality, preserving public order, and promoting public health and welfare. . . . It is only where the state law . . . is based upon an accommodation of the special interests of employers, unions, employees, or the public in employee self-organization, collective bargaining, or labor disputes that the likelihood that its application to persons under NLRB [or RLA] jurisdiction will upset the balance struck by Congress . . . requir[ing the] exclusion of state law. . . ." Cox, *Labor Law Preemption Revisited,* 85 Harv.L.Rev. 1337, 1355–56 (1972).

The Supreme Court has clearly recognized this in its recent decisions. It recently noted:

> "Our cases indicate . . . that inflexible application of the [preemption] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal scheme." *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25,* 430 U.S. 290, 302, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977); *accord, Sears, Roebuck and Co. v. San Diego County District Council of Carpenters,* —— U.S. ——, ——, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).

These two factors—a significant state interest and the risk of interference with the federal scheme—have been invoked in justifying state courts' entertainment of defamation actions, *Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), actions for intentional infliction of emotional distress, *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25, supra,* and actions for trespass, *Sears, Roebuck and Co. v. San Diego County District Council of Carpenters, supra.* In *Linn, supra,* the Court refused to preempt a defamation action against, *inter alia,* a union and two of its officers for circulating a defamatory statement about the plaintiff during an organizational campaign although an unfair labor practice under § 8 of the NLRA might have

also been made out. Last term in *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25, supra,* the Court permitted an action for intentional infliction of emotional distress to be brought in state court although it stemmed from a venomous campaign against plaintiff entailing hiring hall referral discrimination, an unfair labor practice under the NLRA. In holding that the claim for emotional distress was not preempted, the Court ruled, "Simply stated, it is essential that the state tort be either unrelated to employment discrimination *or a function of the particularly abusive manner in which the discrimination is accomplished or threatened* rather than a function of the actual or threatened discrimination itself." (Emphasis added.) *Id.* 430 U.S. at 305, 97 S.Ct. at 1066. The gist of appellant's case is not that he was wrongfully discharged but the "particularly abusive manner in which it was accomplished."

Finally, that a state action here would risk little interference with the federal scheme is underscored by contrasting it with *Andrews v. Louisville & Nashville R.R,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), which the majority finds controlling. There a railroad employee brought an action for breach of contract because, upon his recovery from an accident, he was not reinstated to the position that he had previously held. The Court in *Andrews* ruled that the claim involved a question of construction of the collective bargaining agreement—whether under the agreement the employer's conduct amounted to a wrongful discharge and thus was a minor dispute which had to be submitted to arbitration. Clearly, if a state court had entertained that action, it would necessarily have had to accommodate employer-employee relations and thus interfered with the Adjustment Board's jurisdiction over the interpretation of such agreements, 45 U.S.C. § 153 First (i); Congress had made the judgment that a Board familiar with industry practices could better interpret a collective bargaining agreement. However, in the instant case, no such special expertise is needed.

No construction of labor agreements or weighing of labor interests is necessary. A state court can easily determine if the appellees deliberately placed the blame on appellant here and whether their conduct was sufficient to rise to the tort of intentional infliction of emotional distress.