**Billy Sterling ADAMS, Plaintiff,**

v.

**UNITED AIRLINES, INC., Defendant.**

No. 81 C 5298.

United States District Court, N.D. Illinois, E.D.

April 18, 1983.

Sheldon Hodes, Chicago, Ill., for plaintiff.

Robert H. Brown, United Air Lines, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, Senior District Judge.

Plaintiff, Billy Sterling Adams ("Adams"), has brought this action against United Air Lines, Inc. ("United"), alleging that United prevented him from resuming his regular employment duties after he sustained a back injury at defendant's San Francisco, California facility, and that his subsequent discharge from United's employ was wrongful. In his amended complaint, Adams contends that United manipulated the reports of treating and evaluating physicians, that his discharge was racially motivated, that he was harassed by a private investigator hired by United and that United's actions have caused him severe emotional distress. While failing to state so specifically, Adams apparently claims that the jurisdiction of this court is founded upon diversity of citizenship. Currently pending is defendant's motion for summary judgment.

### I. *Factual Background.*

Plaintiff Adams, presently a citizen of California, was initially employed by United as a ramp serviceman on October 14, 1969. He worked in Chicago at the O'Hare International Airport until April, 1976, at which time he was transferred to San Francisco.

On November 30, 1976, Adams sustained a back injury while at work. He worked periodically between the date of the injury and July, 1977, at which time he was placed on Extended Illness Status ("EIS"). EIS is defined in the collective bargaining agreement ("the agreement") between United and International Association of Machinists and Aerospace Workers ("IAM") as a status where an employee continues to accrue seniority and retains certain benefits, but is not paid. EIS is usually no more than two years in duration, but may be extended if circumstances warrant. If the two year period is not extended, the employee is automatically terminated. Pursuant to this provision, Adams was terminated on December 21, 1979.[1]

Under the IAM-United collective bargaining agreement, an employee who disagrees with separation from EIS may file a grievance, and may further appeal to the System Board of Adjustment. (*See* Articles XV(D), XVIII).[2] The IAM did in fact grieve Adams' December 21 separation, but subsequently withdrew its grievance after determining that United's discharge did not violate the contract.

Throughout 1977 and 1979, Adams' medical and work status was thoroughly reviewed in connection with both his pending California worker's compensation claim[3] and with attempts to return him to active employment. While several medical reports suggest that, during the first six months of 1977, Adams could return to work and perform his regular duties, it is not entirely clear whether during this period he actually performed the heavy manual labor required of ramp servicemen and if so, the number of days on which this occurred. It does appear that Adams drove a tractor during at least some of this time.

---

1. Originally, Adams was to have been terminated on July 31, 1979. Because of a 58-day work stoppage in 1979, however, United agreed to change the termination date.

2. Article XV, pertaining to Extended Illness Status, provides, in relevant part:

   "D. Following notice to the Union and the employee that the employee will be separated, the Union, if legally authorized, may appeal the Company's decision directly to the fourth step of the grievance procedure as provided in the Bargaining and Grievance Procedure article of the Agreement. If such appeal is not filed on or before the date the employee's extended illness status expires, the Company's action shall be final and binding. Further appeal, if desired, shall be to the System Board of Adjustment provided for in the Agreement."

3. On March 6, 1979, Adams was found to be permanently partially disabled after adjustment of 17%. He appealed this award, which was denied by the California Worker's Compensation Appeals Board on May 18, 1979.

At no time after late July, 1977 did Adams present any note or letter from his physician releasing him to work without physical restriction.

In his memorandum filed in opposition to United's motion for summary judgment, Adams sets forth a somewhat rambling narration of the medical examination process, from which he concludes that United deliberately manipulated medical reports so as to prevent him from resuming his regular job. He seems to imply that there was some conspiratorial motive guiding United's physicians. Adams charges that the manipulation of the medical reports represents a breach of "a duty of good faith towards the plaintiff," (plaintiff's memorandum, p. 13), and that it led to his wrongful discharge from United's employ.

II. *Jurisdiction.*

■ In 1936, Congress extended coverage of the Railway Labor Act ("RLA") to the air transportation industry. 45 U.S.C. §§ 181–188. One of the primary purposes of the RLA is to minimize interruptions in the nation's transportation services by strikes and labor disputes. *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 687, 83 S.Ct. 956, 959, 10 L.Ed.2d 67 (1963). To effectuate that purpose, the Act provides for the creation of system adjustment boards to arbitrate the so-called "minor" disputes between employees and carriers. "Minor" disputes are defined as "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation, generally involving only one employee." *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co.*, 353 U.S. 30, 33, 77 S.Ct. 635, 636, 1 L.Ed.2d 622 (1957).[4] The adjustment boards represent a "mandatory, exclusive and compre-

hensive system for resolving grievance disputes." *Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co.*, 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963). *See also De La Rosa Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29, 31–32 (1st Cir.1978). Ordinarily, courts do not have jurisdiction over the merits of any employment dispute subject to determination by a system board of adjustment. *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Chicago and Northwestern Transportation Co. v. United Transportation Union*, 656 F.2d 274, 277 (7th Cir.1981).[5]

■ United contends that all claims set forth by Adams, except his race discrimination claim, are "minor" disputes and are therefore jurisdictionally barred by the RLA. It argues that Adams' claims are governed by the discharge and arbitration remedies outlined in the collective bargaining agreement. In response, Adams rejects United's characterization of this action as contractual in nature, urging instead that he has avoided the preemption set forth in *Andrews* by confining his complaint to common law tort actions for wrongful discharge and intentional infliction of emotional distress.

The court agrees with United, and finds that all of Adams' non-racially based claims are jurisdictionally barred. The basic injury of which Adams complains, his wrongful discharge, is plainly contractual in nature and, accordingly, his complaint involves a "minor" dispute which must be arbitrated pursuant to the RLA's mandatory grievance provisions. *See Andrews*, 406 U.S. at 324, 92 S.Ct. at 1565; *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930,

---

4. "Major" disputes, on the other hand, evolve from the bargaining process for a new or altered contract and generally look to the future acquisition of rights as opposed to the assertion of rights claimed to have vested in the past. *See Chicago and Northwestern Transportation Co. v. United Transportation Union*, 656 F.2d 274, 278 (7th Cir.1981).

5. There is an exception which allows a court to determine whether a union has properly represented the employee. *See Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). This exception has not been invoked by Adams, as he nowhere claims that the union is guilty of unfair representation.

99 S.Ct. 318, 58 L.Ed.2d 323 (1978). Any damages which Adams claims to have suffered flowed from his alleged wrongful dismissal from his employment. The purported evil motivation of United would cause no legal injury absent a finding that the discharge was wrongful. Adams' use of the words "wrongfully" and "knowingly" to characterize United's actions cannot alter these basic facts. Thus, plaintiff's attempt "to make an end-run around the jurisdictional scope of [the] RLA by the use of an ingeniously framed complaint alleging a tort[,]" *De La Rosa Sanchez v. Eastern Airlines, Inc.,* 574 F.2d 29, 32 (1st Cir.1978), must fail.

Adams' attempt to avoid the scope of the RLA by characterizing his action as one involving the tortious infliction of emotional distress is equally unavailing.[6] Such a characterization again misses the basic point that all of Adams' alleged injuries flow from his discharge. In *Magnuson,* plaintiff was discharged from his employment as a train dispatcher for his alleged negligence in causing the collision of two trains. He claimed that he was the victim of a conspiracy among railroad personnel, including supervisors, investigators and hearing officers, to conceal the fact that railroad negligence actually caused the accident. Plaintiff argued that the gist of his action was tortious infliction of emotional distress. The Ninth Circuit disagreed, stating:

> "Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged. *Artful pleading cannot conceal the re-*

*ality that the gravamen of the complaint is wrongful discharge.* · If the pleading of emotional injury permitted aggrieved employees to avoid the impact of the R.L.A., the congressional purpose of providing a comprehensive federal scheme for the settlement of the employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted."

*Magnuson,* 576 F.2d at 1369 (emphasis supplied). *See also Beers v. Southern Pacific Transportation Co.,* 110 LRRM 2782, 2785–86 (N.D.Cal.1981); *Choate v. Louisville & Nashville Railroad Co.,* 110 LRRM 2780, 2781–82 (S.D.Ill.1981). The court finds this reasoning equally applicable to the air transportation industry.

Adams' complaint thus sets forth a contractual claim arising out of an alleged wrongful discharge, a claim which must be resolved pursuant to the grievance procedures outlined by the RLA. Absent a charge that he was unfairly represented by the union, *see* note 5, *supra,* this court is without jurisdiction to hear all of Adams' non-racially based claims.

### III. *Adams' Race Discrimination Claim.*

◼ In *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), the Supreme Court reiterated the now well-accepted formula, initially set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for evaluating a claim of employment discrimination:[7]

---

**6.** Also unavailing is Adams' attempt to demonstrate some conspiracy on the part of certain physicians who examined him. The court notes that a substantial portion of Adams' argument is devoted to a detailed recitation of various medical reports relating to plaintiff's back injury. As United indicates, however, the medical examination process necessary to determine whether an employee on EIS is able to return to work is unquestionably part of the "matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A." *Magnuson,* 576 F.2d at 1369. This is particularly true in the

instant action, as Article XIX(B) of the agreement provides for the selection of a third impartial physician if the Company's physician and the employee's physician do not agree as to whether the employee meets the physical requirements of his or her job. In addition, Article XV(D) provides specific procedures for the grieving of EIS terminations. *See* note 2, *supra.*

**7.** *Burdine* and *McDonnell Douglas* involved suits brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* While Adams makes no mention of Title VII in his complaint, the court will presume that it is

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." (Citations omitted.)

*See also United States Postal Service Board of Governors v. Aikens,* — U.S. —, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Soria v. Ozinga Bros., Inc.,* 704 F.2d 990 (7th Cir.1983); *Mason v. Continental Illinois National Bank,* 704 F.2d 361 (7th Cir.1983); *Golomb v. Prudential Insurance Co. of America.* 688 F.2d 547 (7th Cir.1982).

In his complaint, Adams contends that "the refusal of Defendant to assign Plaintiff to available less strenuous work and the discharge of Plaintiff were racially motivated." (Complaint, ¶ 7(E)). This represents the sole allegation in the complaint relating to Adams' racial discrimination claim. While Adams attempts in his memorandum to support his charge with a claim that two supervisors, Mike Scanlon and John Steadman, made racially demeaning comments in his presence, he fails to provide any facts linking them or their comments to his discharge. Indeed, several statements by Adams in his deposition plainly reveal that his assertions are without merit:

Q. All right, Let me ask you about Scanlon. You mentioned that Scanlon was the supervisor on duty. What knowledge does he have of this case?

A. He was my immediate supervisor the night that I got hurt and it was he that took me to Peninsula Hospital.

Q. What about his knowledge of your attempting to be returned to work? Do you have any facts relating to that?

A. No, I don't have any facts relating to that.

Q. Any knowledge on his role in your eventual discharge?

A. No.

(Adams' deposition, p. 112). As to Steadman's involvement in Adams' discharge, the court notes the following interchange:

Q. Do you have any facts at all which would link Steadman up in any way to your eventual discharge?

A. Other than this? [Apparently pointing to letter of reprimand, dated February 19, 1977.]

Q. Yes.

A. No.

(Adams' deposition, pp. 166–67).[8]

Adams has thus failed to set forth any concrete evidence to support his claim that United's motive in terminating him was his race. As stated in *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1218 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981):

"Summary judgment is improper in a discrimination case—or any other—if it involves—as it often must—any weighing of conflicting indications of motive and intent. Here plaintiff had no indications of motive and intent, supportive of his position, to put on the scales for weighing. It was a wholly empty case. In such circumstances, summary judgment is proper."

*See also Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988,

---

under this statute that he is attempting to set forth a claim of racial discrimination.

**8.** Steadman's lack of involvement in Adams' discharge is further illustrated by the fact that he

was transferred from San Francisco to Los Angeles in March, 1978, a year and a half prior to the discharge.

68 L.Ed.2d 304 (1981) ("[m]ere conclusory allegations of discrimination are not sufficient to withstand a motion for summary judgment, ..."); *Mason*, 704 F.2d at 367 (same).

IV. *Conclusion.*

For the reasons stated above, United's motion for summary judgment is granted. The cause is ordered dismissed.