Daniel E. MAYON, Plaintiff,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant.

Civ. A. No. B–84–61–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 19, 1986.

Russell L. Cook, Young, Cook & Hampton, Houston, Tex., for plaintiff.

John D. Rienstra, Jr., Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

This action was commenced by Daniel M. Mayon on January 9, 1984. In his amended complaint, alleging that he was wrongfully discharged from the employ of the defendant Southern Pacific Transporation Company. Plaintiff contends that the defendant's actions violated 45 U.S.C. §§ 51, 55, and 60, commonly referred to as the *Federal Employers Liability Act* (FELA), and that these actions constituted intentional infliction of emotional distress and wrongful discharge under state law. The plaintiff seeks actual damages, punitive damages and attorney's fees.

This action is now before this court on defendant's motion to dismiss the plaintiff's complaint.

## FACTS

Prior to plaintiff commencing this action against the defendant, he filed an FELA action, seeking damages for personal injuries sustained while he was an employee of the defendant. A jury trial was had and the plaintiff was awarded $200,000. The judgment was paid by the defendant.

At the time of trial the plaintiff was employed by the defendant and his employment continued until October 7, 1983, when the defendant disqualified him from further duty for alleged medical reasons. It is also noted that October 7, 1983, is the date on which the judgment was satisfied.

It is the medical disqualification and termination from employment that is the basis of this action, Cause No. B–84–61–CA, i.e., an action alleging that the defendant wrongfully discharged the plaintiff.

In essence, plaintiff claims that he was discharged because he was successful in pursuing his legal rights under FELA, and not because he was physically unable to perform his duties. Defendant contends that the plaintiff's discharge was legal, proper and not motivated by any ulterior motive and that if the plaintiff's discharge was in fact wrongful the plaintiff has failed to exhaust his administrative remedies, to which he is limited.

This court finds that the doctrine of preemption prohibits the plaintiff from asserting his claims in this court. The plaintiff must instead pursue his claims under the Railway Labor Act, 45 U.S.C. § 151, et seq. (RLA). It is, therefore, the judgment of this court that the defendant's motion to dismiss the plaintiff's complaint should be granted.

## WRONGFUL DISCHARGE UNDER STATE LAW

■ The plaintiff argues that he has, based on diversity jurisdiction, a cause of action under *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985); however, this cause of action was viewed by the Texas Supreme Court as a limited exception to the employment at will doctrine.

In *Sabine,* the court stated:

We now hold that public policy, as expressed in the laws of this state and the United States which carry criminal penalties, requires a very narrow exception to the employment-at-will doctrine announced in *East Line & R.R.R. Co. v. Scott* [72 Tex. 70, 10 S.W. 99 (1888)]. That narrow exception covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act.

Thus, the plaintiff has failed to state a cause of action for wrongful discharge for two reasons; he has failed to pursue his rights under the collective bargaining agreement, *see, Strachan v. Union Oil Co.,* 768 F.2d 703 (5th Cir.1985), and cannot avail himself of the exception created in *Sabine.*

## INFLICTION OF EMOTIONAL DISTRESS

■ Because of the movement of the law in this area, the court will generally review the controlling cases before discussing them in relation to the plaintiff's claims.

In *Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), the Supreme Court stated:

The very concept of wrongful discharge implies some sort of statutory or contractual standard that modifies the traditional common law rule that a contract of employment is terminable by either party at will.... [T]he only source of petitioner's right not to be discharged ... is the collective-bargaining agreement between the employer and the union.

406 U.S. at 324, 92 S.Ct. at 1565. The Court continued at p. 324, 92 S.Ct. at p. 1565:

His claim is therefore subject to the Acts requirement that it be submitted to the Board for adjustment.

Then in *Farmer v. United Brotherhood of Carpenters & Joiners Local 25,* 430

U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338, (Date), the Supreme Court formulated what has been called an exception to the rule in *Andrews.*

The Seventh Circuit Court of Appeals in *Choate v. Louisville & Nashville R. Co.,* 715 F.2d 369 (7th Cir.1983) succinctly and accurately analyzed the holding in *Farmer* as follows:

In *Farmer,* the plaintiff had brought an action in in state court against his union claiming intentional infliction of emotional distress and unlawful discrimination in job referrals. The case went to trial solely on the emotional distress claim and the plaintiff prevailed. However, the California Court of Appeal reversed, concluding that the entire dispute was subject to the exclusive jurisdiction of the National Labor Relations Board. The United States Supreme Court vacated that decision, ruling that preemption was not appropriate in that particular situation. Utilizing a flexible analysis, the Court considered the nature of the interest being asserted and the potential effect that concurrent judicial and administrative remedies would have on the administration of national labor policies. The Court concluded that the state had a substantial interest in protecting its citizens from outrageous conduct which intentionally inflicted emotional distress. In analyzing the potential for interference with the federal labor scheme, the Court noted that the state tort action could be resolved without requiring any determinations as to the underlying labor dispute, i.e., the existence of any unlawful discrimination. The fact that the N.L.R.B. had no authority to resolve or remedy an emotional distress claim was also deemed significant. Based on those considerations, the Court concluded that preemption was not mandated since a substantial state interest was asserted and its adjudication would not interfere with the federal labor scheme. However, the Court provided the following caveat:

[W]e reiterate that concurrent state-court jurisdiction cannot be permit-

ted where there is a realistic threat of interference with the federal regulatory scheme. Union discrimination in employment opportunities cannot itself form the underlying "outrageous" conduct on which the state-court tort action is based; to hold otherwise would undermine the pre-emption principle. Nor can threats of such discrimination suffice to sustain state-court jurisdiction. It may well be that the threat, or actuality, or employment discrimination will cause a union member considerable emotional distress and anxiety. *But something more is required before concurrent state-court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.* [Footnote deleted.] 430 U.S. at 305, 97 S.Ct. at 1066. (Emphasis added)

The Court in *Choate* noted that although the Supreme Court in *Farmer* spoke in terms of concurrent state court jurisdiction, "[T]he same principles apply to the federal district courts since they have no jurisdiction to address claims cognizable by the National Adjustment Board," at 371, citing *Missouri, K.T.R. Co. v. Brotherhood of Ry. & S.S. Clerks,* 188 F.2d 302 (7th Cir.1951); *Morrissette v. Chicago, B. & Q.R. Co.,* 299 F.2d 502 (7th Cir.1961), *cert. den.* 369 U.S. 874, 82 S.Ct. 1141, 8 L.Ed.2d 277 (1962).

Therefore, the central issue of this case is whether the plaintiff can avail himself of the *Farmer* exception.

In *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.1978), the plaintiff was discharged from his employment for allegedly failing to carry out his duties in a non-negligent manner. After being terminated he filed suit in a Montana State court, alleging a cause of action for inten-

tional infliction of emotional distress. The defendant removed the case to federal court and then moved to have the plaintiff's complaint dismissed. The complaint was dismissed on the ground. that the action fell within the exclusive jurisdiction of the R.L.A. The plaintiff appealed urging the *Farmer* exception was applicable to his action.

The court in *Magnuson* stated:

If the basic injury was his wrongful discharge, the complaint involves a minor dispute which must be arbitrated following the procedures of the [R.L.A.] ... His emotional distress was an incident of the wrongful discharge, rather than a result of an alleged conspiracy ... Artful pleading cannot conceal the rality that the gravamen of the complaint is wrongful discharge.

at 1369. The court refused to apply the *Farmer* exception because the factors were found to be "inextricably intertwined" with the grievance machinery of the collective bargaining agreement and of the R.L.A.

In the case at bar the damages claimed flow from the fact that the plaintiff was discharged. If this court adjudicates this action a determination of the propriety of the medical evaluation that led to the plaintiff's termination must be had, such a determination necessarily involves a risk of interferance with the policy and procedures under the R.L.A.

Thus, like *Magnuson,* the plaintiff's complaint is based on facts which are inseparable from the grievance machinery applicable in this case.

In *Choate v. Louisville & Nashville R. Co.,* 715 F.2d 369 (7th Cir.1983), the plaintiff alleged that the defendant had intentionally and recklessly inflicted emotional distress upon him by terminating his employment and subsequently refusing to reinstate him in accordance with the determination of the Public Law Board. The complaint was dismissed and the plaintiff appealed urging the rationale of *Farmer.*

The court in *Choate* quickly pointed out that the characterization of the defendant's conduct as improper implied the existence of contractual standards in the collective bargaining. agreement. *Choate* at p. 371. The *Choate* opinion also noted that under Illinois law the propriety of the defendant's conduct could not be avoided and that jury instructions could not therefore isolate the employment discrimination issue, as could be done in *Farmer.* Though formulation of Illinois law produced this particular statement it seems to be a principle of general application. For where the issue is the correctness of an employer's decision to medically disqualify an employee, as in this case, the adjudication of such a decision must "involve interpretation of the collective bargaining agreement and would thus infringe on the exclusive jurisdiction of the N.R.A.B. (National Railroad Adjustment Board)." *Choate* at 372.

The plaintiff cites *Balzeit v. Southern Pacific Transportation Co.,* 569 F.Supp. 986 (N.D.Cal.1983) as controlling in the instant case. Though this court finds the decision therein as correctly stating the principles set forth in *Farmer,* the facts of *Balzeit* are distinguishable from the case at bar.

In *Balzeit* the plaintiff alleged "that he suffered severe emotional distress as a result of Southern Pacific's insistence that as a condition precedent to his reinstatement after his accident, he discharged the attorney representing him in his aforementioned FELA claim." At 986 and 987. The plaintiff had filed in state court and the defendant sought removal under 28 U.S.C. § 1441(c). The defendant cited *Andrews, supra,* and *Magnuson* for the proposition that the plaintiff's claim was governed by the R.L.A. and was thus removable. Although the case is in a different procedural setting the analysis of the pertinent cases is the same as in the instant case.

The court in *Balzeit* found *Farmer* to be controlling for two reasons. First, the court found no real threat of interference with the regulatory scheme pursuant to the N.R.A.B.

In regard to the potential for overlap into an area of primary federal concern, it should be noted that the state court, in reviewing the merits of Balzeit's Second and Third Causes of Action, would only peripherally concern itself with the merits of the underlying labor dispute.

The court impliedly found that there was no threat of interference because the plaintiff's claim arose not from the refusal to reinstate but from another act, that being the attempt to prevent the plaintiff's pursuit of his FELA claim. Thus, the plaintiff's claim could be separated from the labor dispute without a real threat of interference. Using this same rationale, the court in *Balzeit* distinguished *Magnuson*:

> In contrast, Balzeit's Second and Third Causes of Action seek damages for infliction of emotional distress *flowing, not from Southern Pacific's alleged "wrongful refusal to reinstate", but rather from its alleged attempt to prevent Balzeit from continuing to retain legal counsel in pursuit of his FELA claim.* Moreover, the record shows that Balzeit was dismissed months earlier than the date upon which the outrageous conduct is alleged to have occurred. Further, as noted, there is nothing in the collective bargaining agreement governing the relationship between Balzeit's union and Southern Pacific that protects against conduct and emotional injury allegedly stemming therefrom which is involved in our pending action. For these reasons, the *Magnuson* case is distinguishable and the Supreme Court's decision in *Farmer* is clearly controlling. (Emphasis added)

The *Balzeit* court clearly viewed the plaintiff's claim as one involving an attempt by the defendant to prevent the pursuit of an FELA claim and not as one arising out of a wrongful refusal to reinstate. It is in this context that the court found the *Farmer* exception to be applicable, and the same context on which this court distinguishes the instant case from the decision in *Balzeit*.

Thus, under the above analysis, it is the opinion of this court that the threat of interference with the judgment of the R.L.A. is great, as the adjudication of the claim presented would necessarily require interpretation of the collective bargaining agreement, since the emotional distress alleged by the plaintiff arises directly out of plaintiff's medical disqualification and not from an act substantially outside the confines of the collective bargaining agreement as in *Balzeit*.

## THE ALLEGED VIOLATION OF
## 45 U.S.C. § 55

■ 45 U.S.C. § 55 provides in part:

> Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Chapter, shall to that extent, be void.

The plaintiff claims that the defendant's action was clearly a device by which the carrier is attempting to exempt itself from the Liability Act. The plaintiff argues that *Strong v. Penn Central Railroad Company*, 297 F.Supp. 595 (S.D.N.Y.1969) is authority for establishing a cause of action under § 55. In that case the defendant promulgated a company policy which provided that an employee who instituted a FELA action lost certain privileges. Such a regulation falls directly within the language of § 55. Here the plaintiff has not shown this court any recognized policy nor has he alleged that such a custom or practice violating § 55 existed within the defendant's corporation. Furthermore, this court finds the 9th Circuit's holding in *Bay v. Western Pacific Railroad Company*, 595 F.2d 514 (9th Cir.1979) to be controlling on this issue. The court therein stated:

> Bay claims that his discharge by Western Pacific because of his failure to settle his FELA suit constituted a "device by which Western Pacific sought to exempt itself from some FELA liability by encouraging Bay to settle." He further claims that § 55 provides a private cause

of action to an employee victimized by such a device.

*We disagree. On its face § 55 does not create a private cause of action.* Instead, the legislative history of the bill containing the nearly identical predecessor of § 55, § 5, establishes that Congress' purpose in enacting § 5 was to create a "shield" against a railroad's defense that an employee had contracted away his right to sue the railroad for personal injuries and not to provide a "sword" for a separate suit against the railroad. Congress indicated that it wished to "void" contracts "discharging the company from liability for personal injuries"; such contracts had become almost a standard practice in the railroad industry. S.Rep. No. 1386, 60th Cong., 1st Sess., 6 (1908). Congress also noted that although many states had held such contracts unenforceable as a defense to an employee's action, the United States Supreme Court had found such a contract a good defense because there was no federal statute invalidating the contract. *Id.* at 7. Finally, the congressional report suggested that the federal law under § 5 would correspond with the law in those states that made such contracts "invalid, and ... no defense to an action against" a railroad for injuries to an employee. *Id.* The report makes no mention of § 5 authorizing a separate suit against a railroad because it undertook a device or entered into an unenforceable contract.

### THE ALLEGED VIOLATION OF 45 U.S.C. § 60

■ 45 U.S.C. § 60 provides in part:
Any contract or rule, regulation or device whatsoever, the purpose, intent or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void.

The plaintiff relies on *Hendley v. Central of Georgia Railroad Company,* 609 F.2d 1146 (5th Cir.1980). In that case the plaintiff sued to enjoin the railroad from holding a disciplinary hearing in regard to aid he had given a fellow employee regarding that employee's FELA claim. The court held that where 45 U.S.C. § 60 is violated the dispute is not subject to the exclusive jurisdiction of the R.L.A.

The plaintiff argues that although the circumstances in *Hendley* are different, the necessity for the enforcement is the same. In *Landfried v. Terminal R. Ass'n of St. Louis,* 721 F.2d 254 (8th Cir.1983), the court stated:

We might reach a different conclusion if, as in *Hendley v. Central of Georgia Railroad Co.,* 609 F.2d 1146 (5th Cir. 1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981), plaintiffs could show that their discharge constitutes the violation of a specific federal statutory section. But we do not need to decide whether we would adopt the view taken by the Fifth Circuit in Hendley, for the fact is that *Congress has not enacted a statute prohibiting an employer from discharging an employee in retaliation for filing a FELA action.* Given the availability to plaintiffs of recourse to the arbitration procedure established under the RLA, there is little reason for a federal court to imply a right of action where Congress has not acted to create one. (p. 256)

Like the court in *Lanfried,* this court declines to imply a violation of § 60 on the facts of the case at bar.

### CONCLUSION

It is therefore concluded that it is improper for this court to adjudicate the claims alleged by the plaintiff in view of the authorities discussed, precluding this court of jurisdiction. Furthermore, any argument not discussed herein is found to be without serious merit. Finally, this court is of the opinion that the plaintiff's complaint be accordingly DISMISSED.

IT IS SO ORDERED.