**Susan F. GREGORY, Plaintiff,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY, a corporation, Defendant.**

Civ. No. 4–85–720.

United States District Court,
D. Minnesota,
Fourth Division.

May 15, 1986.

John C. Boylan, Rerat Law Firm, and Gary W. Becker, Stone, Ribble, Bremseth, Meyer, Collins & Wood, Minneapolis, Minn., for plaintiff.

Barry McGrath, H.K. Bradford, Jr., St. Paul, Minn. (Richard J. Schreiber, Sr. Gen. Counsel, Ft. Worth, Tex., of counsel), for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion to dismiss or, in the alternative, for summary judgment. Defendant's motion to dismiss will be granted.

## FACTS

Plaintiff is a Billings, Montana resident and a former employee of defendant. Plaintiff applied for a position in defendant's Billings communication facility March 1, 1985. Plaintiff's application for employment was approved and she accepted a job with defendant. The position acquired by plaintiff was a union position subject to a collective bargaining agreement.

Pursuant to the collective bargaining agreement to which defendant and plaintiff's union were parties, plaintiff was required to take a pre-employment physical examination. The examination included mandatory drug testing. Plaintiff took the examination at a Billings clinic March 22, 1985. Plaintiff began work April 1, 1985, before the results of the examination had been received by defendant. Under such circumstances, the collective bargaining agreement provided that plaintiff was a probationary employee subject to final approval by defendant's medical examiners.[1]

On April 15, 1985, plaintiff was notified that due to her failure to pass the mandated physical her employment with defendant was being terminated. Plaintiff was informed by company officials that a controlled substance had been detected in her urine. Plaintiff was permitted to speak to Burlington Northern physicians in Fort Worth, Texas, who informed plaintiff that the controlled substance which had been detected was THC—the active substance in marijuana. Plaintiff admitted to company

officals that the preceding January 1, 1985, she had taken "a couple of hits of marijuana." Jean E. Corbett Aff. ¶ 8.[2]

When plaintiff's attempts to gain reinstatement proved unsuccessful, she brought this action, alleging wrongful discharge, negligent administration of the drug test, and the intentional infliction of emotional distress.

Defendant now brings this motion to dismiss or, alternatively, for summary judgment on the ground that this action is within the exclusive jurisdiction of the National Railway Adjustment Board pursuant to the Railway Labor Act, 45 U.S.C. §§ 151–188.

## DISCUSSION

Plaintiff was employed by a railway carrier and was therefore subject to the grievance procedure set forth in the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188. Section 153 First (i)[3] of the RLA provides that so-called "minor disputes" that cannot be resolved by intra-company negotiation shall be referred to the National Railway Adjustment Board (NRAB) or one of the regional boards for arbitration. The provision for arbitration is not a voluntary undertaking, but rather is compelled by the Act. Further, administrative remedies provided by the RLA are primary and exclusive, so that, while the courts have frequently referred to the "exhaustion of remedies" requirements of the RLA, that is in fact a misnomer[4] in that the administra-

---

1. Plaintiff does not deny that she had full knowledge of her probationary status at the date she commenced employment with defendant.

2. Plaintiff admitted to occasional use of marijuana and cocaine. Susan F. Gregory Deposition, 49, 51, 52, 54.

3. Section 153 First (i) of 45 U.S.C. provides:
   The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle

such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

4. In *Andrews v. Louisville and Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), the specific question presented was whether a discharged railroad employee had to exhaust his administrative remedy of NRAB arbitration before commencing a civil action for wrongful discharge. The Court noted that "exhaustion of remedies" is a misnomer because the federal administrative remedy is exclusive and does not allow post-exhaustion actions in another forum:

tive remedy is exclusive and does not allow post-exhaustion review in the courts, with certain limited exceptions.[5]

Thus, the question before the Court is whether plaintiff's claims are "minor disputes" within the meaning of 45 U.S.C. § 153 First (i). If so, plaintiff's remedies lie exclusively with the NRAB and the Court is without jurisdiction.

In general, a "minor dispute" within the meaning of the RLA is one which relates to the interpretation of an existing labor management contract. It is directed to rights already vested. A major dispute, in contrast, involves the formation of the collective bargaining agreement or the substantial alteration of an existing agreement. It involves the acquisition of rights. *Brown v. American Airlines, Inc.*, 593 F.2d 652 (5th Cir.1979), *citing Elgin, Joliet and Eastern Railway Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), *modified,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). In *Burley* the Supreme Court defined a minor dispute as one which "relates either to the meaning or proper application of a particular collective bargaining agreement provision [in a] specific situation [or to] ... some incident of the employment relation ... independent of those covered by the collective agreement...." *Burley*, 325 U.S. at 723, 65 S.Ct. at 1290. A minor dispute has been said to be one which "arises out of the collective bargaining agreement," *Tate*, 415 F.Supp. at 846, or which has a "not obviously insubstantial relationship to the collective bargaining agreement," *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369–70 (9th Cir.1978), or the resolution of which requires the "interpretation of the applicable collective bargaining agreement," *Landfried v. Terminal Railroad Association of St. Louis*, 721 F.2d 254, 255 (8th Cir.1983). A minor dispute has also been characterized as one which encompasses claims which "grow out of the employment relationship ... [and] involv[ing] attempts to impose rights which are incident to that relationship," *Minehart v. Louisville and Nashville Railroad Co.*, 731 F.2d 342, 344 (6th Cir.1984); or stemming from a "normal incident of any employment relationship," *Majors v. U.S. Air, Inc,* 525 F.Supp. 853, 855 (D.Md.1981), or which "arises directly out of a labor dispute." *Choate v. Louisville and Nashville Railroad Co.,* 715 F.2d 369, 372 (7th Cir. 1983).

The United States Court of Appeals for the Eighth Circuit has had occasion to consider the scope of NRAB jurisdiction in two recent decisions, *Landfried v. Terminal Railroad Association of St. Louis,* 721 F.2d 254 (8th Cir.1983), and *Tello v. Soo Line Railroad Co.,* 772 F.2d 458 (8th Cir. 1985). In *Landfried* the Eighth Circuit determined that plaintiff's claims of retaliatory discharge were minor disputes where "it appears that resolution of plaintiffs' claims will depend at least in part on interpretation of the applicable collective bargaining agreement." *Landfried,* 721 F.2d at 255. In *Tello* the court held that plaintiff's claims were not within the exclusive

---

The term "exhaustion of administrative remedies" in its broader sense may be an entirely appropriate description of the obligation of both the employee and carrier under the Railway Labor Act to resort to dispute settlement procedures provided by that Act. It is clear, however, that in at least some situations the Act makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another. A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding.... He is limited to the judicial review of the Board's proceedings that the Act itself provides.... In such a case the proceedings afforded by 45 U.S.C. § 153 First (i), will be the only remedy available to the aggrieved party.

*Andrews,* 406 U.S. at 325, 92 S.Ct. at 1565 (citations omitted).

5. Judicial review of orders of the NRAB is limited to (1) failure of the Board to comply with the act, (2) allegations of fraud or corruption on the part of the Board, or (3) failure of the Board's order to conform, or to confine itself, to matters within the Board's jurisdiction. 45 U.S.C. § 153 First (p). Only upon one or more of these grounds may a court set an order of the Board aside. *Tate v. Long Island Railroad Co.,* 415 F.Supp. 845 (E.D.N.Y.1976).

jurisdiction of the NRAB where the claims were not based "primarily" on the collective bargaining agreement, although the court did recognize that exclusive NRAB jurisdiction does lie where the employee's claims are based *exclusively* upon the collective bargaining agreement. *Tello*, 772 F.2d at 460. In addition, in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), Justice Blackmun writing for the Court declared that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim ... is pre-empted by federal labor-contract law." *Allis-Chalmers*, 105 S.Ct. at 1916.[6]

Applying these precedents to the case at bar leads the Court to conclude that resolution of each of plaintiff's claims would require interpretation of the applicable collective bargaining agreement, and that accordingly, plaintiff's claims are within the NRAB's exclusive jurisdiction.

### Wrongful Discharge

■ Plaintiff's first claim is a wrongful discharge claim. Plaintiff alleges that "[t]he termination of plaintiff's employment by defendant without just cause was wrongful, illegal and unjustified." Complaint ¶ IX.

It is well established that a wrongful discharge claim is within the exclusive jurisdiction of the NRAB. *See, e.g., Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045 (7th Cir.1983). The sole source of plaintiff's right not to be discharged and of defendant's obligation to restore plaintiff's employment is the collective bargaining agreement between defendant and plaintiff's union. Absent that agreement, plaintiff's employment would be terminable at defendant's will. The courts have stated that under such circumstances the plaintiff's exclusive remedy lies with the grievance and arbitration procedures set forth in the RLA. *Andrews v. Louisville and Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972);[7] *Davidson v. Long Island Railroad Co.*, 617 F.Supp. 67 (S.D.N.Y.1985); *Landfried*, 721 F.2d at 255; *Stevens v. Braniff Airways, Inc.*, 490 F.Supp. 231 (D.Minn.1980). *See also Carson v. Southern Railway Co.*, 494 F.Supp. 1104 (D.S.C.1979) (plaintiff's wrongful discharge claim based on his failure to take a physical examination found to be within the NRAB's exclusive jurisdiction). Accordingly, the Court finds that plaintiff's wrongful discharge claim is a "minor dispute" within the exclusive jurisdiction of the NRAB.

6. *Allis-Chalmers* is a case involving the preemptive effect of the National Labor Relations Act (NLRA). The Courts have recognized that cases construing the preemption doctrine in the context of the NLRA are of valid precedential authority in interpreting the RLA. *Beers v. Southern Pacific Transportation Co.*, 703 F.2d at 425, 428, *citing Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383–84, 89 S.Ct. 1109, 1117–18, 22 L.Ed.2d 344 (1969). However, it has been stated that it is more difficult to find preemption in an NLRA case because "[t]he scope of that Act is limited to certain specified labor practices.... In contrast to the more limited scope of the NLRA, the mandatory arbitration provisions of the RLA were created to provide for the prompt and orderly settlement of all disputes growing out of grievances, or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Majors*, 525 F.Supp. at 856.

7. The plaintiff in *Andrews* was a railroad employee who was unable to work for some time after he was involved in an automobile acci-

dent. When Andrews felt that he was able to resume work, the railroad refused to allow him to return. Andrews severed his connection with the railroad, treated its refusal to allow him to work as a wrongful discharge, and sought damages in a Georgia state court. After the railroad removed the case to federal court, both the district court and the court of appeals held that Andrews' wrongful discharge claim was barred because he had failed to exhaust his administrative remedies under the RLA. The Supreme Court affirmed the dismissal of Andrews' suit, emphasizing that the only source of his right not to be discharged, and therefore to treat the alleged discharge as wrongful, was the collective bargaining agreement between the employer and the union. Reasoning that Andrews' claim, and the railroad's disallowance of it, stemmed from differing interpretations of the collective bargaining agreement, the Court held that such discharge grievances are subject to compulsory arbitration under the RLA. *See Landfried*, 721 F.2d at 255 (summarizing *Andrews* ).

### Negligence

Plaintiff also brings causes of action sounding in negligence. In count two of her complaint, plaintiff alleges that defendant failed to exercise reasonable care in administering the drug test. In count three of her complaint plaintiff alleges that defendant's failure to "reinstate or otherwise reevaluate plaintiff" was "contrary to the standard of care of a reasonable person" such that it "constitutes wilfull, wanton and gross negligence." Complaint ¶ XIII. In count four plaintiff alleges that "[d]efendant's acts and omissions were committed either so willfully and maliciously or so negligently" as to "make [d]efendant liable to the plaintiff for exemplary and punitive damages." Complaint ¶ XV. Count five purports to be a negligence claim brought pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60.

The Court finds that resolution of plaintiff's negligence claims would require interpretation of the applicable collective bargaining agreement, and that accordingly, these claims are within the exclusive jurisdiction of the NRAB. In essence, plaintiff's negligence counts allege that defendant failed to adhere to a proper "standard of care" in carrying out the collective bargaining agreement-mandated drug test. Otherwise stated, the standard of care which defendant allegedly contravened can be understood only with reference to the collective bargaining agreement—it is the collective bargaining agreement which established the alleged duty to exercise reasonable care and the collective bargaining agreement which sets forth the scope of that alleged duty. In *Choate v. Louisville and Nashville Railroad Co.*, 715 F.2d 369 (7th Cir.1983), the court found that "[plaintiff's] characterization of the defendant's conduct as improper necessarily implies the existence of contractual standards in the collective bargaining agreement," and that, accordingly, it would be impossible to adjudicate plaintiff's claims without reference to the collective bargaining agreement. *Choate*, 715 F.2d at 371–72. Here the alleged duty of care derives from the collective bargaining agreement. As such, resolution of plaintiff's negligence claims would require interpretation of that agreement.

In addition, the "right asserted by" the plaintiff "derives from the rights and obligations established by the contract." *Allis-Chalmers*, 105 S.Ct. at 1914. Thus, as in *Allis-Chalmers*, resolution of plaintiff's negligence claims are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," *Allis-Chalmers*, 105 S.Ct. at 1916, and accordingly must be treated as exclusive NRAB claims. *See also Minehart v. Louisville and Nashville Railroad Co.*, 731 F.2d 342 (6th Cir.1984) (where the dispute grows out of the employment relationship and, in the final analysis, involves an attempt to impose a right which is incident to that relationship, the statutory forum is the Adjustment Board, absent a clear expression of legislative policy to the contrary); *Brotherhood of Locomotive Engineers v. Burlington Northern Railroad Co.*, 620 F.Supp. 173, 175 (D.Mont.1985) (controversy between railroad and union over railroad's unilateral implementation of mandatory urine-testing policy was minor dispute within exclusive jurisdiction of NRAB).

### Intentional Infliction of Emotional Distress

Many courts have considered the question whether an employee's intentional emotional distress claim is within the exclusive jurisdiction of the NRAB. With few exceptions,[8] the courts have found that

---

8. In *Tello v. Soo Line Railroad Co.*, 772 F.2d 458 (8th Cir.1985), the Eighth Circuit found that plaintiff's intentional emotional distress claim was federally cognizable. That case is distinguishable.

The plaintiff in *Tello* was discharged following his successful prosecution of a Federal Employers Liability Act (FELA) suit against his employer. As part of the terms of the FELA settlement agreement entered into in that case plaintiff agreed not to exercise his accrued seniority rights. Tello did not agree to surrender those seniority rights, however. Tello thereafter attempted to represent Soo Line employees at grievance hearings, and to act as local chairman of the union. When Soo Line attempted to

such claims are "a normal incident of the employment relation" and thus are "minor disputes" within the meaning of the RLA. The clearest statement of this line of case-law is the Ninth Circuit's decision in *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.1978), wherein it was stated:

> If the basic injury was [plaintiff's] wrongful discharge, the complaint involves a minor dispute which must be arbitrated following the procedures of the R.L.A. All of the damages which he claims to have suffered *flowed from his wrongful dismissal from his employment.* The alleged evil motivation of the defendants would have caused him no legal injury if he had either not been discharged or if his discharge was not wrongful. The injuries for which he sought compensation included not only his emotional distress, but also his loss of income from his job from the time of his discharge until retirement age, together with loss of his retirement benefits. *His emotional distress was an incident of the wrongful discharge.... Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged. Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge.*

*Magnuson,* 576 F.2d at 1369 (emphasis added). *See also Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir.1983); *Beers v. Southern Pacific Transportation Co.,* 703 F.2d 425 (9th Cir.1983); *Carson v. Southern Railway Co.,* 494 F.Supp. 1104 (D.S.C.1979); *Choate v. Louisville and Nashville Railway Co.,* 715 F.2d 369 (7th Cir.1983); *Truex v. Garrett Freightlines,* 784 F.2d 1347 (9th Cir.1986).[9] The Court finds that plaintiff's emotional distress claim therefore did not require interpretation and application of the collective bargaining agreement, inasmuch as a court or jury could assess the depth of Tello's outrage without reference to the collective bargaining agreement.

This case is distinguishable from *Tello* in that in this case there is no FELA settlement, the breach of which gave rise to plaintiff's emotional distress. Plaintiff's emotional distress stems from the fact of her discharge, or from defendant's allegedly abusive handling of her drug test and subsequent requests for retesting. Resolution of these disputes would require reference to the collective bargaining agreement.

---

prevent Tello from carrying on these activities, Tello brought suit in federal court, seeking an injunction and damages on the theory that Soo Line had breached the FELA settlement agreement, intentionally inflicted emotional harm, and violated the RLA by interfering with the rights of union members to choose their representatives. *See Tello,* 772 F.2d at 459.

The Eighth Circuit determined that Tello's claims were federally cognizable. While recognizing that "interpretation of the collective bargaining agreement and the law of the shop" is within the NRAB's exclusive jurisdiction, 772 F.2d at 460, the court found that "where the *primary question* is the interpretation of a FELA release and questions of interpretation of a railroad industry collective bargaining agreement are *only incidental,* the district court should exercise its jurisdiction without requiring exhaustion of remedies before the NRAB." *Id.* (Emphasis added.) The court distinguished *Landfried* by saying that the rights claimed by the employee in that case "were exclusively based upon an applicable collective bargaining agreement." 772 F.2d at 460.

The court went on to hold that Tello's intentional emotional distress claim was federally cognizable. The court found that the emotional distress which Tello suffered was distress flowing from breach of the FELA settlement. As such, Tello's distress was not an incident of wrongs committed by his employer in the context of the employment relationship per se, but rather, stemmed from wrongs committed in connection with a wholly separable contract (the FELA settlement). Adjudication of this

9. In the recent *Choate* decision the Seventh Circuit found that adjudication of plaintiff's emotional distress claim would be impossible without reference to the applicable collective bargaining agreement since "one of the necessary considerations in determining whether the defendant's conduct is sufficiently outrageous to be tortious is whether the defendant's conduct involved the exercise of a legal right." *Choate,* 715 F.2d at 372. Thus, the court found that it would be necessary in adjudicating plaintiff's claim to examine the collective bargaining agreement to ascertain whether defendant was exercising a legal right. Just such a resort to the collective bargaining agreement would be required in the case at bar. Of course, where interpretation of the collective bargaining agreement is required to adjudicate a claim that claim is a "minor dispute" within the meaning of the RLA.

claims are minor disputes within the NRAB's exclusive jurisdiction.

**Farmer Exception**

■ Plaintiff argues that her intentional emotional distress claims are excepted from the NRAB's exclusive jurisdiction by *Farmer v. Brotherhood of Carpenters, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer,* an NLRB case, the Supreme Court found that a state law intentional emotional distress claim was not preempted by federal labor law. That case involved a local union officer's claim that, as a result of disagreements with other union officials, he was subjected to a campaign of ridicule and personal abuse and was discriminated against by the union hiring hall. After reviewing exceptions to the preemption doctrine recognized in earlier cases, the Court stated a two-part balancing test for delineating the scope of the preemption doctrine: the courts must balance (1) the state interest in regulating the conduct in question, against (2) the potential for interference with the federal regulatory scheme. *Farmer,* 430 U.S. at 297, 97 S.Ct. at 1061.

The Court finds that plaintiff's intentional emotional distress claim is not within the *Farmer* exception to preemption, for two reasons.

First, federal court litigation of these claims would raise a substantial threat of "interference with the federal regulatory scheme." In *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the Supreme Court explained the second part of the two-part *Farmer* balancing test in the following terms: The critical inquiry is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in *Garner v. Teamsters Local 776,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953)) or different from (as in *Farmer*) that which could have been, but was not presented to the arbitration board. It is only in the former situation that a state court's exercise of jurisdiction necessarily *involves a risk of interference* with the federal regulatory scheme. *Sears,* 436 U.S. at 197, 98 S.Ct. at 1757. Here the issues which would be presented to the federal court are identical or nearly identical to the issues which plaintiff would have raised before the NRAB had she elected to proceed before that forum.

Second, plaintiff has made no showing that the conduct to which she was subjected was of a "substantial or enduring quality." In *Farmer* the Supreme Court stated that, to avoid preemption, the state interest must be "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Farmer,* 430 U.S. at 296–97, 97 S.Ct. at 1061. The Court went on to state that allegations of outrageous conduct would not be preempted where the conduct was "of such substantial or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Farmer,* 430 U.S. at 302, 97 S.Ct. at 1064. Here, the conduct to which plaintiff was subjected is not of such substantial or enduring quality.[10] There have been no allegations of "violence

10. The basis for plaintiff's outrage is the following conduct of defendant:

(1) Burlington Northern officials initially refused to disclose to plaintiff which controlled substance had been found in her urine, claiming that the information was confidential;

(2) Burlington Northern officials met plaintiff's assertions that she had tested negatively for drugs in connection with her duties as a United States Naval Reservist with suspicion;

(3) after plaintiff presented to Burlington Northern officials proof that she had tested negatively in a voluntary urine test taken April 17, 1985 and had submitted to them the negative results of her Naval Reserve tests, the officials told her that Burlington Northern does not hire people who use illegal drugs;

(4) the "clear implication" of the positive drug test that plaintiff is chemically dependent or has abused illegal substances caused plaintiff to suffer shock, anxiety, and outrage, and has caused her to suffer a stigma which will effect future career goals and choices.

The Court notes that it is difficult to credit plaintiff's final allegation, in that plaintiff admittedly was able to obtain alternative employ-

or threats of violence," *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981), nor have there been threats of discrimination and reprisal, as in *Farmer.* It is also relevant to point out that in *Farmer* the plaintiff faced ongoing abuse, whereas in the case at bar the "outrage" suffered by plaintiff was a discrete incident. In sum, plaintiff's allegations of outrageous conduct fall short of the standard necessary to make out a *Farmer* exception to preemption.[11]

**Probationary Employee**

■ Plaintiff also claims that her suit is not preempted because, as a probationary employee at the time of her discharge, she was not subject to the RLA process.

The collective bargaining agreement to which plaintiff was subject provides that new employees may begin work on a "probationary" basis pending final approval by defendant's medical department. Thus, as stated above, in plaintiff's case she took the physical examination March 22, 1985, but was permitted to commence work on a probationary basis April 1, 1985. Plaintiff argues that, as a probationary employee, she was not subject to the RLA arbitration procedures.

Plaintiff's position is not supported by the statute or the caselaw. Nothing in the statute provides for exemption from the Act's coverage in the case of new or probationary employees. To be covered by the RLA, the employee must be in the service of a carrier and the work performed by the employee must bear a direct relationship to the transportation activities of the carrier. *International Longshoremen's Association v. North Carolina State Ports Authority*, 370 F.Supp. 33 (E.D.N.C.1974), *affirmed*, 511 F.2d 1007 (4th Cir.1975). Plaintiff was employed by a carrier and her work as a communications specialist bore a direct relationship to the transportation activities of the carrier. As stated in *Hodges*

*v. Atchison, Topeka and Santa Fe Railway Co.*, 728 F.2d 414 (10th Cir.1984): "Plaintiff's employment in the craft governed by the applicable collective bargaining agreement makes him subject to the terms and conditions of employment obtained in the agreement, and the collective bargaining agent was obliged to represent him. Thus, plaintiff's union membership is irrelevant to the applicability of the collective bargaining agreement. The existence of a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry" mandates that all carrier employees be subject to RLA jurisdiction. 728 F.2d at 417, *citing Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 907, 17 L.Ed.2d 842 (1967), *Steele v. Louisville and Nashville Railroad Co.*, 323 U.S. 192, 202–04, 65 S.Ct. 226, 231–33, 89 L.Ed. 173 (1944).

**Futility of Administrative Remedies**

■ Plaintiff's final plea for exemption from the RLA's administrative requirements is her claim that resort to the NRAB would have been "wholly futile." In *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969) the Supreme Court appeared to recognize an exception to the exhaustion requirement where it would be "wholly futile to go through arbitration." *See Montgomery v. National Railroad Passenger Corp.*, 619 F.Supp. 1393 (D.Conn.1985). In *Glover* the Supreme Court stated that requiring minority employees alleging discrimination on the part of their union and employer to comply with an arbitration procedure administered by those same parties would be an exercise in futility. The courts have subsequently recognized that upon a demonstrable showing of "futility" railway workers may bypass the RLA arbitration process and proceed in federal court.

---

ment immediately following the termination of her employment with defendant.

11. In vivid contrast to the "outrage" suffered by plaintiff in the case at bar is the conduct suffered by the plaintiff in *Richardson v. Communications Workers of America*, 443 F.2d 974 (8th Cir.1971). In *Richardson,* the employee faced "1,000 '[v]ile and derogatory' signs, constant 'chanting, jeering, and gesturing,' a daily 'rain of nuts, bolts, and screws thrown at him,' intentional cigarette burns, vandalism of his car and locker, and vulgarities about his wife." *Richardson,* 443 F.2d at 983 n. 12. It is this sort of conduct to which the *Farmer* exception is directed.

In this case plaintiff has made no showing whatsoever that proceedings before the NRAB would have been futile, other than to allege in conclusory terms that this is the case. Accordingly, the Court finds that plaintiff's claims are not within the narrow "futility" exception to exclusive NRAB jurisdiction. *See Montgomery,* 619 F.Supp. at 1396 ("plaintiff has not shown that resort to the appeal process, which is required by the RLA, would have been 'futile' in the specific circumstances of this case"); *Kozina v. Baltimore & Ohio Chicago Terminal Railroad Co.,* 609 F.Supp. 53 (N.D.Ill. 1984) (court finds that resort to the NRAB would not be futile).

The purpose of the RLA [12] is to promote stability in labor-management relations in. the national railroad industry. *Landfried,* 721 F.2d at 254. In order to minimize interruptions in the nation's transportation services by strikes and labor disputes, the RLA provides for the creation of adjustment boards to arbitrate disputes between employees and carriers, "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions...." 45 U.S.C. § 184.

To permit railroad employees to initiate discharge disputes in the federal courts, thereby bypassing orderly arbitration procedures, would frustrate congressional purpose and would precipitate interruptions in the nation's transportation industry. Concern for stability is particularly important where drug testing of railroad employees is involved—given the public's reliance on the services of transportation carriers, substance abuse by employees in the industry raises a potentially grave threat to public safety and welfare. A drug-testing policy designed to meet these concerns would be robbed of its efficacy if employees who tested positively were routinely permitted access to the federal courts.[13]

Accordingly, based on the foregoing, IT IS ORDERED that defendant's motion to dismiss is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**12.** Because none of plaintiff's claims are premised on a specific federal statutory section, the preemptive effects of the RLA have not been rebutted and plaintiff's FELA cause of action will be dismissed. *See Jackson v. Consolidated Rail,* 717 F.2d at 1049–51 (thorough discussion); *Hodges v. Tomberlin,* 510 F.Supp. 1280 (S.D.Ga. 1980).

**13.** In *Allis-Chalmers* the Supreme Court recognized several policy concerns which underscore the preemption doctrine. Many of these concerns are applicable here:

(1) the federal interest in interpretive uniformity and predictability requires that collective bargaining agreements be interpreted in light of federal common law of labor relations and not by resort to multi-various state laws;

(2) preemption in the context of the NLRA or RLA preserves the. central role of arbitration in our system of industrial self-governance;

(3) were state law allowed to determine the meaning of collective bargaining agreements, the parties would be uncertain what they are binding themselves to, as a result, it would be more difficult to reach agreements, and disputes as to the nature and meaning to be given to the agreements would proliferate;

(4) permitting direct resort to the courts would eviscerate a central tenet of federal labor law, *viz.,* that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

*See Allis-Chalmers,* 105 S.Ct. at 1910–16.