739 P.2d 205

SOUTHERN PACIFIC TRANSPORTATION COMPANY, a Delaware corporation, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF PIMA; Honorable Michael J. Brown, a Judge thereof, Respondents,

and

David MERSHON and Mary Mershon, husband and wife, Real Parties in Interest.

No. 2 CA–SA 87–0020.

Court of Appeals of Arizona, Division 2, Department A.

April 23, 1987.

Review Denied June 30, 1987.

**552**

Tower, Byrne & Beaugureau, P.C. by David L. Beaugureau and Terrance L. Sims, Phoenix, for petitioner.

Davis, Siegel & Gugino, P.C. by Barry M. Davis, Tucson, for real parties in interest.

## OPINION

FERNANDEZ, Judge.

Petitioner, a railroad which operates as a common carrier in interstate commerce, brings this special action claiming that the respondent judge erred in a legal ruling on petitioner's motion for partial summary judgment in the underlying tort action against it. We agree and grant relief.

The real parties in interest are David Mershon and Mary Mershon, husband and wife. The Mershons filed an action against petitioner in state court under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (FELA), claiming that petitioner had negligently failed to provide David Mershon with a safe place to work and, as a result, he was injured and suffered damages while working in the regular course and scope of his duties. In addition to the FELA claim, the Mershons alleged four counts involving the intentional torts of battery, invasion of privacy, and infliction of emotional distress. They claimed that petitioner's requirement that David Mershon be treated by a company-selected physician immediately following his injury and that he provide a urine specimen and blood sample for testing for the presence of drugs and/or alcohol caused severe emotional distress, intruded upon his private affairs, and resulted in offensive contact.

The FELA claim is not before us and was not the subject of petitioner's motion for partial summary judgment below. The question presented is whether the Railroad Labor Act, 45 U.S.C. §§ 151–188, pre-empts jurisdiction in state court and requires that Mershon's claims be resolved under the provisions of that Act. The issue is a matter of first impression in this state, turns entirely on legal principles, and is a matter of important public interest. See *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983).

On September 18, 1984, David Mershon was employed by petitioner as a diesel locomotive machinist. His complaint alleges that he was injured while working in the regular course and scope of his duties on that date. While Mershon was being transported to a local hospital for treatment of the injury, the driver received a radioed directive to take him to the Tucson Clinic and, while Mershon was at the clinic, petitioner ordered tests designed to detect the presence of drugs or alcohol. Mershon contends that he did not object to the choice of treatment facility nor to the tests but submitted to both only because he feared the loss of his job or other discipline by petitioner. The parties do not dispute that Mershon tested negative for the presence of drugs and alcohol.

On May 10, 1974, at the commencement of his employment, Mershon signed an agreement entitled "Medical History and Examination Record," known as Form S–2946–A, which formed a part of the working rules and conditions of his employment with petitioner. In part, Form S–2946–A provides:

> 15. I AGREE to permit examination by the physician selected by the Company to determine my physical fitness for employment and to permit further exami-

nations from time to time as considered necessary by the Company.

\* \* \* \* \* \*

17. In consideration of my employment by the Company I AGREE that I will allow Southern Pacific Hospital Department doctors and any other doctors the Company may select to examine my person and body as often as the Company may deem necessary. AND I HEREBY WAIVE all objections to such doctors testifying whenever called upon by the Company. I further agree that representatives of the Company may at any time have full access to and be permitted to make copies of any and all hospital and medical charts and records, including x-ray and laboratory records made or maintained by such doctors or any other doctors appertaining to my mental or physical condition, and any doctor or hospital maintaining or having any such records is hereby authorized and directed to permit the Company's representatives to inspect and copy such records.

Mershon's employment was also subject to Rule G of petitioner's Rules and Regulations for the Government of Mechanical Department Employees (which rule is apparently uniform throughout the railroad industry, see *Brotherhood of Maintenance of Way Employees, Lodge 16 v. Burlington N.R.R.*, 802 F.2d 1016 (8th Cir.1986)). Rule G provides as follows:

The use of alcoholic beverages, intoxicants or narcotics by employees subject to duty, or their possession, use, or being under the influence thereof while on duty or on Company property, is prohibited.

Employees shall not report for duty under the influence of, or use while on duty or on Company property, any drug, medication or other substance, including those prescribed by a doctor, that will in any way adversely affect their alertness, coordination, reaction, response or safety.

The parties do not dispute that at the time of Mershon's injury in September 1984, petitioner had a screening policy, implemented in August 1984, to test employees involved in any type of work-related accident or injury. Mershon testified in his deposition that he was aware of drug testing within petitioner's operating department. He also testified to his knowledge that failure to comply with Rule G, which was posted in his employee locker room, would jeopardize his employment. Mershon's claims arise from petitioner's policy that he initially be treated at a specific facility and that he initially be tested for on-the-job drug or alcohol use.

Petitioner sought summary judgment as to those claims, arguing that they are pre-empted by the Railway Labor Act and that the result of such pre-emption is to deprive the state court of jurisdiction. Initially, the respondent judge denied the motion, finding that genuine issues of material fact existed. Petitioner's subsequent motion for clarification, rehearing, and reconsideration was granted, and the following order was entered:

It is the defendant's position on its motion for partial summary judgment that forcibly taking the injured plaintiff to a physician-employee of the defendant and forcing him to submit to urinalysis and blood testing to determine the presence of drugs or alcohol in his system, all against his express will, is merely a matter of interpretation of defendant's Rule G and must therefore be submitted to the National (Railroad) Adjustment Board for its determination.

THE COURT FINDS that the conduct complained of by plaintiff is not a "grievance" arising out of the collective bargaining agreement which is subject to mandatory review by the Adjustment Board; rather, *the allegations are that the defendant deliberately and intentionally committed egregious and outrageous acts upon the person of the plaintiff. Plaintiffs' claims sound in intentional tort. No agreement can validly force a plaintiff to waive his rights to access to the courts to seek recompense for a defendant's deliberate and intentionally harmful conduct.*

If plaintiffs' claims can be qualified as "grievances" at all, this Court holds that

they are not such "grievances" which are subject to the Adjustment Board process.

THE COURT FURTHER FINDS that *the exercise of jurisdiction by this Court over Counts Two through Five of plaintiff's complaint will in no way jeopardize the federal regulatory scheme governing this country's rail systems.*

THE COURT HOLDS that this Court's jurisdiction over Counts Two through Five of plaintiff's complaint is not preempted by the Railway Labor Act. (Emphasis added.)

Mershon's employment by petitioner subjects him to the procedures set forth in the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188. "Section 153 First (i) of the RLA provides that so-called 'minor disputes' that cannot be resolved by intra-company negotiation shall be referred to the National Railway Adjustment Board (NRAB) or one of the regional boards for arbitration."[1] *Gregory v. Burlington N.R.R.*, 638 F.Supp. 538, 540 (D.Minn.1986). The provision for referral to the NRAB is not voluntary but is required by the Act. If the claim arises under 45 U.S.C. § 153 First (i), Mershon's remedies lie exclusively with the NRAB, and the state court is without jurisdiction to hear the matter.

A "minor dispute" within the meaning of § 153 First (i) of the RLA is one which generally relates to the interpretation of an existing labor management contract. *Gregory,* supra. The Supreme Court has defined a minor dispute as one which "relates either to the meaning or proper application of a particular [collective bargaining agreement] provision [or] ... some incident of the employment relation ... independent of those covered by the collective agreement." *Elgin, J. & E.R. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, 1894 (1945), modified, 327 U.S. 661,

66 S.Ct. 721, 90 L.Ed. 928 (1946). In *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369–1370 (9th Cir.), cert. denied, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), the Ninth Circuit characterized a minor dispute as one which has a "not obviously insubstantial" relationship to the labor contract. That court reached its determination by considering a number of cases which had used the "not obviously insubstantial" language as a test. There, Magnuson alleged intentional infliction of emotional distress resulting from his discharge after the investigation of a two-train collision which was ultimately determined to have been caused by Magnuson's conduct. The court said:

> Every employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he has been wronged. Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge. If the pleading of emotional injury permitted aggrieved employees to avoid the impact of the R.L.A., the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted.

576 F.2d at 1369.

In the instant case, Mershon's pleading of intentional tort cannot conceal the fact that his complaint is based entirely upon the petitioner's policies regarding treatment by company-selected physicians and testing for alcohol and drug use by employees involved in accidents and injuries. As noted above, Form S–2946–A and Rule G constitute part of the working rules and conditions to which Mershon was subject in his employment with petitioner. The gravamen of the complaint is a challenge of

---

1. Section 153 First (i) of 45 U.S.C. provides as follows:

   The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

the petitioner's policies, all of which arise from the working rules and conditions of Mershon's employment. In sum, Mershon's claims relate entirely to and are incidental to the employment relationship, and they bear a not obviously insubstantial relationship to the labor contract and working rules involved here. Mershon argues that since the collective bargaining agreement applicable to his trade is not specific as to the policies involved here, his claim is not within 45 U.S.C. § 153 First (i). For the reasons stated above, we disagree.

Mershon contends that his claim does not fall within the purview of 45 U.S.C. § 153 First (i) as a minor dispute but rather involves a "major dispute" under the RLA, which prohibits a carrier from unilaterally changing its employee rules or working conditions except as provided in the collective bargaining agreement or the Act itself.[2] Based on the language of 45 U.S.C. § 152 Seventh, Mershon argues that petitioner's unilateral implementation, in August 1984, of a requirement that any employee involved in an accident or injury be tested for the presence of drugs or alcohol requires a characterization of his claims as major disputes and allows him to proceed with his claims.

In *Burley,* supra, the United States Supreme Court summed up the major-minor dispute distinction as follows:

The former present the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid. Because they more often involve those consequences and because they seek to create rather than to enforce contractual rights, they have been left for settlement entirely to the processes of noncompulsory adjustment.

The so-called minor disputes, on the other hand, involving grievances, affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or individual quality. They seldom produce strikes, though in exaggerated instances they may do so. Because of their comparatively minor character and the general improbability of their causing interruption of peaceful relations and of traffic, the 1934 Act sets them apart from the major disputes and provides for very different treatment.

325 U.S. at 723–724, 65 S.Ct. at 1290, 89 L.Ed. at 1894–1895 (footnote omitted).

When a minor dispute exists, the submission to NRAB disposition is mandatory. As both parties here agree, a major dispute may not be brought by an individual since individual employees cannot collectively bargain, threaten to strike, or negotiate resolutions which bind all employees under a particular bargaining agreement. Even if petitioner's policies regarding treatment and drug/alcohol detection constitute unilateral rule changes rising to the level of a major dispute, Mershon is not thereby automatically entitled to litigate his claims in court.

The only exception applicable to RLA pre-emption was spelled out by the United States Supreme Court in *Farmer v. United*

---

2. 45 U.S.C. § 152 Seventh provides: "No carrier, its officers or agents shall change the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title." 45 U.S.C. § 156 provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

*Brotherhood of Carpenters and Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer,* the Supreme Court found that federal labor law did not pre-empt an intentional emotional distress claim when, as a result of disagreements with union officials, a local union officer was subjected to personal abuse and an individualized campaign of ridicule and discrimination by the union hiring hall. The Court set forth a two-pronged balancing test to be applied on a case-by-case basis: courts must balance the state's interest in regulating the conduct in question against the potential for interference with the federal regulatory scheme. In discussing its holding in *Farmer,* the Court said concurrent state court jurisdiction can be permitted only when "the state tort [is] either unrelated to employment discrimination or [is] a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." 430 U.S. at 305, 97 S.Ct. at 1066, 51 L.Ed.2d at 353.

The Supreme Court explained the second prong of the *Farmer* balancing test in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 197, 98 S.Ct. 1745, 1757, 56 L.Ed.2d 209, 225 (1978), as follows: "The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board." It is only when the controversy presented in state court is identical to that which could have been presented under the RLA that a state court's exercise of jurisdiction necessarily involves a risk of interference with the federal regulatory scheme.

Mershon's intentional tort claims do not fit within the *Farmer* exception to pre-emption. First, contrary to the finding of the respondent court, state court litigation of Mershon's claims would raise a substantial threat of interference with the federal regulatory scheme. Such litigation would permit various juries and/or courts to render potentially individualized and differing decisions affecting industry efforts to maintain or enhance the safety of the national railway carriers. The issues which would be presented in Mershon's state court action are identical or nearly identical to the issues which he would have raised under the RLA. His tort claims arise from the actual company policies which he challenges and not from the manner in which those policies were applied. Unlike *Farmer,* in which the alleged wrong by the union officials was only tangentially related to unfair labor practices, Mershon's action is based on policies, facts and incidents which are intertwined with the grievance machinery of the collective bargaining agreement, the working rules and conditions of his employment with petitioner, and the RLA. *Magnuson v. Burlington Northern, Inc.,* supra.

Mershon alleges that the petitioner's conduct was "outrageous"; however, he does not allege nor has he shown that the manner in which the petitioner's rules and policies were applied to him was particularly abusive. His claims arise specifically from the rules themselves, not from the manner of their application. He was subject to the requirements of Rule G and Form S–2946–A, knew the requirements and was aware of testing in the operations department. He was not physically forced to comply with the test orders. In the superior court's order, quoted above, there is no finding that the rules were abusively applied, only that the rules themselves resulted in "egregious and intentional" acts. That is not sufficient under *Farmer.*

Even if we construe Mershon's complaint to include a claim that his emotional distress occurred as the result of the abusive manner in which petitioner performed the alleged "outrageous" acts, we do not find that concurrent jurisdiction is appropriate. Under Arizona law with regard to intentional infliction of emotional distress, the conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hixon v. State Compensation*

*Fund,* 115 Ariz. 392, 394, 565 P.2d 898, 900 (App.1977). Furthermore, claims of intentional infliction of emotional distress, battery, and invasion of privacy will not lie when the conduct complained of involves the exercise of a legal right. See *Daniel v. Magma Copper Co.,* 127 Ariz. 320, 620 P.2d 699 (App.1980). The issue of the legality of petitioner's conduct under the collective bargaining agreement and the Railway Labor Act could not be avoided in a trial of Mershon's claims and would necessarily bear on the fact finder's analysis. In *Farmer,* the court determined that the discrimination issue could be effectively isolated. We do not find that that could be achieved in this case.

We conclude that there is a realistic threat of interference with the federal regulatory scheme if Mershon's action is allowed to proceed. The adjudication of his claims would necessarily involve interpretation of the collective bargaining agreement and petitioner's working rules and conditions and would thus infringe on the exclusive jurisdiction of the NRAB.

The order of the superior court is vacated with directions to enter an order granting partial summary judgment as to counts two through five of plaintiff's complaint.

HATHAWAY, C.J., and HOWARD, P.J., concur.