### Kenneth E. GRAY

v.

### CHESSIE SYSTEM, et al.

### Civ. No. Y-83-4304.

United States District Court,
D. Maryland.

July 23, 1984.

Michael E. Marr, Baltimore, Md., for plaintiff.

H. Russell Smouse and M. Melinda Thompson, Baltimore, Md., for defendants Chessie System, B & O Railroad, C.L. Robinson, Gerald G. Gray and W.C. Comiskey.

Irving Schwartzman, Baltimore, Md., Joseph Guerrieri, Jr., and John J. Sullivan, Washington, D.C., for defendants Broth. of Maintenance of Way Employees, W.A. House and B.J. Twigg.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiff, through a stipulation of dismissal, has reduced his claim in this case to an action against an individual defendant for intentional interference with contractual relations. The defendant, by motion to dismiss, now seeks to obliterate the complaint entirely. Finding that the plaintiff's remaining claim is pre-empted by the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, and that the plaintiff has not exhausted his remedies under the Act, this Court will dismiss the complaint.

This litigation is apparently the result of fraternal animosity. The plaintiff, Kenneth E. Gray, is the brother of the defendant, Gerald G. Gray. Defendant Gray works in a supervisory position for the Baltimore and Ohio Railroad Company. Plaintiff Gray worked as a welder with the B & O, and originally filed this action in state court against his employer, his union, several union officials, and a number of management employees of the B & O. His two-count declaration alleged that the employer breached relevant portions of the collective bargaining agreement then in force, that the union breached its duty of fair representation, and that defendant Gray had intentionally interfered with the contract between the employer and plaintiff Gray by requiring him "to perform tasks which had no business justification nor relation to plaintiff's duties," by subjecting him to unwarranted "reprimands and disciplinary suspensions," and by causing the position occupied by plaintiff Gray to be abolished despite the "continuing need for said position," then causing the position to be "reestablished" and awarded to defendant Gray's brother-in-law.

The defendants filed a petition to remove the case to federal court and a motion to dismiss on the grounds of pre-emption and failure to exhaust arbitration remedies required by the Railway Labor Act. The plaintiff voluntarily dismissed his claims relating to Count One, after learning that the union was, in fact, pursuing his complaint related to his discharge before the "Public Law Board." However, his claim relating to interference with contract, implicating only defendant Gray, remains.

Maryland law does recognize the common-law tort of intentional interference with contractual relations. *Wilmington Trust Co. v. Clark*, 289 Md. 313, 329, 424 A.2d 744 (1981):

> We have recognized that a third party who, without legal justification, intentionally interferes with the rights of a party to a contract, or induces a breach thereof, is liable in tort to the injured contracting party.

The plaintiff maintains that his claim is pendent to the now-dismissed first count of his complaint. Ordinarily, the Court would remand a pendent claim to state court when all federal claims had been dismissed or withdrawn at such an early stage, under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). However, because the defendant maintains that this state law action is pre-empted by the Railway Labor Act, the Court maintains jurisdiction over the remaining claim. Having reviewed the complaint, submissions of the parties, and the relevant caselaw, the Court has determined that dismissal is appropriate.

## REMOVAL

The defendants sought removal of this action from state court under the provisions of 28 U.S.C. § 1441, which provides for removal of "any civil action ... of which the district courts of the United States have original jurisdiction." While it is clear that the federal court may not take jurisdiction over a case where the federal question involved is a defense or a claim which might have been asserted by the plaintiff but was not, it is also clear that a district court, should, under the doctrine of "artful pleading," examine a complaint, upon petition by the defendant, to determine whether the complaint states, on its face, a federal claim. This is particularly true where the federal law has clearly pre-empted state law on the subject.

If the only remedy available to plaintiff is federal, because of pre-emption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading.

14 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3722 at 567–68. The "artful pleading" analysis has been applied to actions such as this, where a state-law action may have been pre-empted by federal labor law, in *Garibaldi v. Lucky Food Stores,* 726 F.2d 1367, 1370 (9th Cir. 1984).

PRE–EMPTION

■ The defendant argues that the plaintiff's claim for contractual interference is pre-empted by that section of the Railway Labor Act (42 U.S.C. § 153 First (i)), which was interpreted by the Supreme Court in *Andrews v. Louisville & N.R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), to require exhaustion of compulsory arbitration before jurisdiction is established in federal courts. The question of whether the plaintiff's claim here must be submitted to arbitration before being submitted to this Court hinges on whether the plaintiff has, in effect, set forth a "minor dispute" or grievance under the contract. Railway Labor Act, *id.* at 322, 92 S.Ct. at 1564.

To aid in its determination of such a question, the Court may turn to analogous decisions of the Supreme Court made under the National Labor Relations Act. *Beers v. Southern Pacific Transp. Co.,* 703 F.2d 425, 428 (9th Cir.1983); *Andrews,* 406 U.S. at 323, 92 S.Ct. at 1564. In *Local 926 v. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983), the Supreme Court summarized the analysis which courts should apply in determining whether a state-law action has been pre-empted or whether the action fits within the exception to the pre-emption doctrine generated by *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1966):

Our approach to the preemption issue has thus been stated and restated. First, we determine whether the conduct that the state seeks to regulate or to make

the basis of liability is actually or arguably protected or prohibited by the NLRA.... [I]f the conduct at issue is arguably prohibited or protected otherwise applicable state law and procedures are ordinarily preempted.... When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the state of the power to act, we refuse to invalidate state regulation or sanction of the conduct.

460 U.S. at 676, 103 S.Ct. at 1458.

The seminal case on Railway Labor Act pre-emption of state tort claims is *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). *Magnuson* held that a state-law tort action for intentional infliction of emotional distress was pre-empted by federal law and was, therefore, foreclosed pending exhaustion of arbitration remedies. The court reasoned that the plaintiff's "basic injury" was his wrongful discharge, and that such a complaint constituted a "minor dispute" which must be "arbitrated following the procedures of the R.L.A." *Id.* at 1369. The court stated that the damages which the plaintiff claims all "flowed from his wrongful dismissal from his employment." *Id.* The Court also noted that his remaining complaints, related to the alleged presentation of false and misleading information at the hearing that led to his discharge, were also raised pursuant to the collective bargaining agreement and were, therefore, grievances required to be submitted to arbitration.

Numerous other courts have held that actions by an employee alleging intentional infliction of emotional distress present "minor disputes" requiring arbitration. *Morris v. Owens-Illinois, Inc.,* 544 F.Supp. 752 (S.D.W.Va.1982); *Choate v. Louisiana & Nashville R. Co.,* 715 F.2d 369 (7th Cir. 1983). Courts have also held that state-law

actions for wrongful discharge, *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045 (7th Cir.1983), and for false imprisonment and defamation, *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981) (Jones, J.), were pre-empted by the provisions of the Railway Labor Act. However, this Court can only find one prior decision in which a court has held that a claim of intentional interference with contractual relations is pre-empted by the Railway Labor Act. In *Salcedo v. Norfolk & Western R. Co.*, 572 F.Supp. 286, 288 (E.D.Mich.1982), *aff'd*, 723 F.2d 911 (6th Cir.1983), the court held:

> Plaintiff's state law claims for intentional infliction of emotional distress and intentional interference with contractual relations are preempted by the provisions of the Railway Labor Act. Plaintiff is only attempting to recast his wrongful discharge claim as a state law tort claim.

While there is not much precedent, it is not difficult to determine that the plaintiff here has attempted to assert a claim which is pre-empted by the Railway Labor Act. Performing the first of the tests mandated in *Local 926* and *Magnuson*, the Court notes that the gravamen of the plaintiff's complaint relates to his wrongful discharge and the defendant's attempts to require him to do work outside that required by the contract. Both qualify as "minor disputes" arising under the contract. *See* Rules 43, 48, and 49 of "Agreement" attached as Exhibit 1 to Exhibit A of Defendant's Motion to Dismiss. As in *Magnuson*, the plaintiff here has attempted to restyle claims which are basically identical to those which should be considered by the National Railway Adjustment Board, and the Court cannot allow the plaintiff's "artful pleading" to evade the mandatory arbitration provisions of the Railway Labor Act.

As to the weight of the state interest, a state would seem to have a far greater interest in protecting its citizens from the false imprisonment and defamation alleged in *Majors* than in protecting the employment contracts of railway workers, which are already governed by the Railway Labor Act, from tortious interference. The interests of the state in its common-law action for tortious interference are minute in comparison to the Railway Labor Act's strong interest in restricting remedies for interpretation and application of the contracts it covers.

Accordingly, the defendant's motion to dismiss will be granted.