**J.L. FOX, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY,**
**Norfolk Southern Corporation, and**
**L.E. Wetsel, Defendants.**

**No. 1:90–CV–2882–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 8, 1991.

Michael J. Warshauer, Burge & Wettermark, Atlanta, Ga., for plaintiff.

Burt DeRieux, Keith J. Reisman, Branch Pike Ganz & O'Callaghan, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This is a case alleging, first, that Defendants Southern Railway Company and Norfolk Southern Corporation failed to provide Plaintiff with a safe workplace in violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq.; second, that these same Defendants were negligent, resulting in Plaintiff's injury; and, finally, that all Defendants libeled Plaintiff. Jurisdiction is vested with this Court pursuant to 28 U.S.C. §§ 1331 and 1332.

This case is presently before the Court on Plaintiff's Motion to Amend Complaint and Defendants' Motion to Dismiss. The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Amend Complaint and GRANTS Defendant's Motion to Dismiss as to Counts III and IV of Plaintiff's Complaint only.

## BACKGROUND

Defendant Southern Railway Company ("Southern") is a common carrier by railroad engaged in interstate commerce having an office and conducting business in Atlanta, Georgia. Defendant Norfolk Southern Corporation ("Norfolk") is a foreign corporation. Defendant L.E. Wetsel, Jr. ("Wetsel") was at all relevant times employed as a superintendent by Defendants Southern and Norfolk.

At all relevant times, Plaintiff J.L. Fox ("Plaintiff") was an engineer employed by Southern. As a member of the United Transportation Union—Engineers, Plaintiff's employment was governed by the provisions of a collective bargaining agreement and the Railroad Labor Act ("RLA"), 45 U.S.C. §§ 151–188 (1990).

On November 15, 1990, Plaintiff allegedly was working on a locomotive parked at mile post 523.0 near Seneca, South Carolina, when the train on which he was working was struck by another train. Plaintiff alleges that he suffered injuries as the result of this collision. Plaintiff's supervisor investigated the circumstances of the injury. In the course of this investigation, various crew members were interviewed, and the cars of the train were inspected. At the conclusion of this investigation, Plaintiff's supervisor determined that Plaintiff had violated Southern's Operating Rules and Instructions, and also that Plaintiff's account of the accident was contrary to the account of at least one other crew member interviewed.

As a result of these findings, Southern determined the necessity of a hearing/investigation regarding the accident pursuant to Article 31, entitled "Investigation and Discipline", of the collective bargaining agreement governing the relationship between Plaintiff and Southern. Accordingly, Wetsel, as superintendent, notified Plaintiff by letter dated November 17, 1990 of the requirement that Plaintiff attend such hearing/investigation to be held on November 23, 1990. At the request of Plaintiff's union representative, the hearing/investigation was postponed until December 3, 1990. On December 8, 1990, Wetsel notified Plaintiff by certified mail that the evidence presented at the hearing clearly proved Plaintiff's violation of the charge of making false statements concerning his alleged injury. Plaintiff was accordingly dismissed from service with Southern. On December 21, 1990, Plaintiff's union representative commenced appeal proceedings, as provided for in the collective bargaining agreement and the RLA, with regard to Plaintiff's termination.

On November 30, 1990, Plaintiff commenced this action in the Superior Court of Fulton County, Georgia. In Count I of his Complaint, Plaintiff alleges that Southern and Norfolk violated the FELA through their failure to provide him with a safe workplace. In Count II, Plaintiff asserts a common law negligence claim against Southern and Norfolk. In Counts III and IV, Plaintiff seeks actual and punitive damages from Southern, Norfolk and Wetsel with regard to Wetsel's allegedly libelous letter sent to Plaintiff dated November 17, 1990.

Pursuant to Defendants' request, the case was removed to this Court on December 31, 1990. Presently, Plaintiff has

moved for leave to amend his Complaint, and Defendants have moved for dismissal of Counts III and IV of Plaintiff's Complaint.

## DISCUSSION

### I. Plaintiff's Motion to Amend Complaint

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend pleadings "shall be freely given when justice so requires." *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir.1979), *cert denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). The decision of whether to grant leave to amend rests within the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). In reviewing a motion for leave to amend, the district court may consider several factors, including undue influence, bad faith or dilatory motive on the part of the movant, undue prejudice to the non-moving party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In addition, courts may consider such factors as the amount of time and the opportunities the movant has had to seek leave to amend, whether the proposed amendment is such that it could have been added shortly after the complaint was filed, whether allowance of the proposed amendment would complicate trial preparation by requiring additional discovery, and whether the movant has attempted to justify any delay. *National Service Industries, Inc. v. Vafla Corp.*, 694 F.2d 246 (11th Cir.1982); *Schneider v. Russell Corp.*, 823 F.2d 422 (11th Cir.1987); *Staggs v. Chrysler Corp.*, 678 F.Supp. 270 (N.D.Ga.1988).

Plaintiff's Amended Complaint differs substantially from his original Complaint. First, in his original Complaint, Plaintiff asserted in Count I claims under the FELA against both Southern and Norfolk, while in Count II, he asserted claims of common law negligence against both Southern and Norfolk. Plaintiff's requested amendment, in contrast, would delete Plaintiff's FELA claim against Norfolk, as well as Plaintiff's claims of common law negligence against both Southern and Norfolk. In their place, Plaintiff would continue to assert only a claim under the FELA against Southern. Second, in Plaintiff's original Complaint, Plaintiff asserted in Counts III and IV libel claims against all three Defendants. Plaintiff's requested amendment, in contrast, would delete Plaintiff's libel claim against Southern, continuing to assert his libel claims against both Norfolk and Wetsel. Apparently, contrary to the allegations contained in his original Complaint, Plaintiff in his Amended Complaint alleges that Wetsel is an employee only of Norfolk, and not of Norfolk *and* Southern. In summary, Plaintiff's Amended Complaint, as submitted, would assert only a claim under the FELA against Southern and libel claims against Norfolk and Wetsel.

In their Response to Plaintiff's Motion to Amend, Defendants object only on the ground that Plaintiff submits this proposed amendment merely in an attempt to avoid preemption by the RLA. Accordingly, Defendants expressly do not object to Plaintiff's request to delete his FELA claim against Norfolk and his claims of common law negligence against both Southern and Norfolk. The Court thus GRANTS IN PART as unopposed Plaintiff's Motion to Amend as regards Plaintiff's requested amendments to Counts I and II of the Complaint.

Although Defendants likewise do not object to Plaintiff's additional request to amend Counts III and IV by deleting his libel claim against Southern, this request requires separate consideration. The Court agrees with Defendants that Plaintiff apparently seeks this amendment in an attempt to recast the Complaint so as to avoid preemption by the RLA. *See* Discussion (II), *infra.* In fact, Plaintiff states in his supporting Brief that it is his intent through such amendment to "clarif[y] Plaintiff's position that he has not brought any action covered by the [RLA]", as evidenced by the Amended Complaint's assertion of libel claims "only against the remaining two Defendants [Norfolk and Wetsel] whose actions are not controlled by the

[RLA].... Neither is a common carrier by rail." Brief in Support of Motion to Amend Complaint, p. 1.

Nevertheless, the Court's attention is directed to at least one case reaching the contrary result. In *Gray v. Chessie System*, 588 F.Supp. 1334 (D.Md.1984), Gray sued his employing railroad, his railroad supervisor and others in state court for intentional interference with his contractual relations with the railroad company. After the case was removed to federal District Court, the defendants filed a motion to dismiss on the grounds of preemption and the plaintiff's failure to exhaust arbitration remedies as required by the RLA. The plaintiff then filed a stipulation of dismissal whereby he reduced his claim to one against his supervisor individually. *Id.* at 1335. Nevertheless, the court found that the claim against his supervisor was also preempted and dismissed the action accordingly. *Id.* at 1336–37. In so doing, the court stated:

> [T]he plaintiff here has attempted to restyle claims which are basically identical to those which should be considered by the National Railway Adjustment Board, and the Court cannot allow the plaintiff's "artful pleading" to evade the mandatory arbitration provisions of the Railway Labor Act.

*Id.* at 1337.

Moreover, it stands to reason that the fact that Plaintiff now seeks to assert claims only against Norfolk and Wetsel is of no consequence, since Plaintiff's libel claims still concern the November 17, 1990 letter notifying Plaintiff of a hearing/investigation to be held pursuant to the terms of his collective bargaining agreement. Thus, Plaintiff's libel claims, *even if* asserted against Norfolk and Wetsel alone, nevertheless are still "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA" so as to require preemption by the RLA. *See infra*, p. 648 (quoting *Magnuson v. Burlington Northern, Inc.*, 576 F.2d 1367, 1369 (9th Cir.), *cert denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978)).

Courts of this district have held that "[t]he liberal amendment rules of F.R. Civ.P. 15(a) do not require that courts indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted." *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir.1969) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (in reviewing a motion for leave to amend, the court should consider as a factor the futility of the proposed amendment)). Thus, due to its finding that Plaintiff's libel claims, as amended, would be subject to dismissal on the same grounds as those included in his original Complaint, the Court DENIES IN PART Plaintiff's Motion to Amend with regard to his request to amend Counts III and IV of the Complaint.

■ Furthermore, Plaintiff has shown evidence of bad faith in his request to amend Counts III and IV of the Complaint. Although Plaintiff's original Complaint alleges that Wetsel was at all relevant times employed by both Southern *and* Norfolk, Plaintiff in his Amended Complaint alleges that Wetsel was employed by Norfolk *alone.* Clearly, Plaintiff is attempting to recast the facts in a form permitting his avoidance of RLA preemption. This the Court cannot permit.

## II. Defendants' Motion to Dismiss

■ Defendants seek dismissal of Counts III and IV of Plaintiff's Complaint, which concern an allegedly libelous letter sent by Wetsel to Plaintiff dated November 17, 1990. Defendants contend that Plaintiff's libel claims are preempted by the RLA.

> The RLA ... provides a comprehensive framework for the resolution of labor disputes in the railroad industry ... [by] establish[ing] elaborate administrative procedures for the resolution of both major and minor labor disputes.... Minor disputes initially must be dealt with through a railroad's internal dispute resolution processes, and if not settled

there, may be submitted to a division of the Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties. Judicial review of these Boards' determinations has been characterized as " 'among the narrowest known to the law.' " *Atchinson, T. & S.F. Railway Co. v. Buell,* 480 U.S. 557, 562–63, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987) (quoting *Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978)).

The RLA gives the National Railroad Adjustment Board exclusive jurisdiction over minor disputes that arise out of collective bargaining agreements. *Union Pacific v. Sheehan,* 439 U.S. at 93–94, 99 S.Ct. at 401–03; *Gunther v. San Diego & A.E.R. Co.,* 382 U.S. 257, 263, 86 S.Ct. 368, 371–72, 15 L.Ed.2d 308 (1965) ("This Court time and time again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board."); *Locomotive Engineers v. Louisville & Nashville R. Co.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963); *Union Pacific R. Co. v. Price,* 360 U.S. 601, 616, 79 S.Ct. 1351, 1359, 3 L.Ed.2d 1460 (1959) ("So far as it appears, all of the Courts of Appeals and District Courts which have dealt with this problem [of RLA preemption] have reached the conclusion that we reach here [that a minor dispute arising out of a collective bargaining agreement may not be made the subject of a common-law action for damages]").

A dispute is a "minor dispute" under the RLA if it "grow[s] out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions...." *Atchinson,* 480 U.S. at 563, 107 S.Ct. at 1414. "The final and exclusive jurisdiction of the Board has a broad sweep; no grievance that may fairly be said to stem from the collective bargaining agreement is excluded." *Beard v. Carrollton R.R.,* 893 F.2d 117, 122 (6th Cir.1989). *See also, Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, 1052 (7th Cir.1983), *cert denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984) ("[T]he RLA has made *any* grievance arising out of the collective bargaining agreement subject to the exclusive arbitral remedies contained in that Act...."). Accordingly, it has been held that any complaint "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA" should be dismissed on grounds of preemption. *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369 (9th Cir.), *cert denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

*Magnuson* is factually very similar to the present case. The plaintiff in that case, a train dispatcher, was charged with responsibility for a head-on collision between two trains. Following an investigation and his resulting discharge, plaintiff filed suit against his employer in state court for damages for the intentional infliction of emotional distress. The defendant removed the case to federal District Court. The court first found plaintiff's claim to constitute a "minor dispute" within the exclusive province of the grievance mechanisms established by the RLA. Due to its additional finding that the plaintiff's complaint was "based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA," the Ninth Circuit affirmed the District Court's dismissal of the complaint as preempted by the RLA. The Court further noted that if the plaintiff could avoid the impact of the RLA by casting his claim as a state law cause of action, "the congressional purpose of providing a comprehensive federal scheme for the settlement of employer-employee disputes in the railroad industry, without resort to the courts, would be thwarted." *Id.*

The court in *Magnuson* based its decision in large part upon the decision of the Supreme Court in *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In that case, the plaintiff, a railway worker, filed suit for wrongful discharge in the Superior Court of Fulton County, Georgia. The plaintiff contended that the railroad had impermissibly failed to return him to duty

following his injury in an auto accident, from which the plaintiff claimed he had fully recovered. The railroad removed the case to federal District Court, and the District Court dismissed the action because of the plaintiff's failure to exhaust his mandatory RLA remedies. Dismissal was affirmed by both the Fifth Circuit Court of Appeals and the Supreme Court, which held that since the collective bargaining agreement was the source of both the employee right and employer obligation at issue in the case, the plaintiff was limited to the grievance and arbitration procedures set forth in the RLA.

The parties direct this Court's attention to no other cases from our jurisdiction addressing the issue of RLA preemption. Indeed, the issue does not appear to be one which has been frequently dealt with by our courts. Nevertheless, the rule stated in *Andrews* and *Magnuson* has been followed by courts in numerous other jurisdictions in cases factually very similar to the case at bar. *See, e.g., Miller v. Norfolk & Western Railway Co.*, 917 F.2d 24 (table) (6th Cir.1990), No. 89–4101, slip op. (claims of libel and slander arising from statements made by defendant's officers and supervisory personnel to the effect that plaintiff had been involved in a theft and fraud scheme, where such statements were made during the course of, or in the investigation leading up to, a disciplinary hearing required by the collective bargaining agreement, were properly dismissed as preempted by the RLA); *Carson v. Southern Railway Co.*, 494 F.Supp. 1104 (D.S.C. 1979) (Hemphill, J.) (where former railroad employee filed suit for defamation as a result of having been accused by a supervisor of being drunk while on duty, court dismissed plaintiff's suit as preempted by the RLA, stating that "the plaintiff's claim lies solely within the jurisdiction of the National Railroad Adjustment Board (or a special board of adjustment), and the plaintiff is without an independent judicial remedy."); *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Mich.1981) (Jones, J.) (where plaintiff accused of theft of company property commenced an action seeking damages for false imprisonment and defamation, court

granted defendant's motion for summary judgment on grounds of preemption by the RLA); *Barchers v. Missouri Pacific Railroad Co.*, 669 S.W.2d 235 (Mo.App.1984) (where plaintiff's being caught sleeping on the job gave rise to an investigation conducted pursuant to the collective bargaining agreement, and during the course of that investigation a letter written by plaintiff's supervisor was introduced which accused plaintiff of "stealing flour from the mill" and referred to him as "lousy and rotten", plaintiff's subsequent claim seeking to recover damages for libel was dismissed as preempted by the RLA); *Louisville & Nashville R.R. Co. v. Marshall*, 586 S.W.2d 274 (Ky.App.1979) (where supervisor's unfavorable job performance evaluation resulted in plaintiff's being demoted, causing plaintiff to file a grievance and request for hearing pursuant to his collective bargaining agreement and the RLA, plaintiff's subsequent libel suit against the railroad and his supervisor was dismissed as preempted by the RLA); *DeTomaso v. Pan American World Airways, Inc.*, 43 Cal.3d 517, 235 Cal.Rptr. 292, 733 P.2d 614, *cert. denied*, 484 U.S. 829, 108 S.Ct. 100, 98 L.Ed.2d 60 (1987) (where statements accusing plaintiff of theft took place either during the investigation mandated by the collective bargaining agreement or during formal or informal disciplinary hearings, plaintiff's subsequent action for defamation and intentional infliction of emotional distress was preempted by the RLA).

The facts of the present case fall squarely within those of the above cases. The source of the alleged libel in this case is a letter dated November 17, 1990, from Superintendent Wetsel to plaintiff. The body of that letter reads as follows:

Gentleman:

Arrange to attend a hearing/investigation on Friday, November 23, 1990 at 11:00 AM in the Trainmaster's Office, Chamblee, S.C.

The purpose of the hearing/investigation is to develop the facts and place your particular responsibility, if any, in connection with your failure to properly secure cars, resulting in an alleged inju-

ry, on the middle track at Seneca, S.C., approximate MP 523.0 on November 15, 1990, at approximately 7:40 AM, while you were serving as crew member on Train No. P68P2. Additionally, Mr. Fox, the purpose will be to develop facts and place your particular responsibility, if any, in connection with your making false statements concerning an alleged injury.

You may bring with you to the hearing/investigation any witness and/or representative you might desire, in accordance with your current working agreement.

Additionally, in accordance with Article 31(b) of your agreement, you are hereby advised that you do not have the option to waive this hearing/investigation.

Yours very truly,

S/L E. Wetsel, Jr.

Superintendent

This letter clearly was written for the sole purpose of complying with the specific notice requirements of Article 31, entitled "Investigation and Discipline", of the collective bargaining agreement governing the relationship between Plaintiff and Southern. Plaintiff's libel claims thus bear a substantial relationship to the collective bargaining agreement, and are "based upon a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the RLA", and are as a result preempted by the RLA. Any contrary result would effectively chill the employer's ability to invoke the disciplinary article of the agreement, or even to notify the employee either of its intent to invoke the disciplinary article or of the charges against that employee, without risking subsequent liability for libel and/or defamation. *See Miller v. Norfolk & Western,* cited *supra,* slip op. at 7–8 ("Claims that relate to matters covered in or by grievance proceedings must be preempted by the RLA, or else they will have a chilling effect on these proceedings."). Therefore, the Court finds plaintiff's claims under Counts III and IV of his Complaint to be preempted by the RLA.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Amend Complaint. Plaintiff's Motion is GRANTED IN PART, as regards Plaintiff's request to amend Counts I and II of the Complaint, and DENIED IN PART, as regards Plaintiff's request to amend Counts III and IV of the Complaint. Furthermore, the Court GRANTS Defendants' Motion to Dismiss as regards Counts III and IV of Plaintiff's Complaint only.

As a result of this Court's allowing Plaintiff's requested amendments to Counts I and II of the original Complaint, and its granting of Defendant's Motion to Dismiss Counts III and IV of the Complaint, Plaintiff presently asserts a single claim against Southern alleging Southern's failure to provide Plaintiff with a safe workplace in violation of the FELA.

So ORDERED.